**UNITED STATES of America, Appellee,**

v.

**Anthony DeCOLOGERO, Defendant, Appellant.**

**No. 86–2115.**

United States Court of Appeals, First Circuit.

Submitted May 8, 1987.

Decided June 19, 1987.

---

Rikki J. Klieman, John W. Thomas and Friedman & Atherton, Boston, Mass., on brief, for appellant.

Robert S. Mueller, III, U.S. Atty., John Voorhees and Stephen P. Heymann, Boston Strike Force, Dept. of Justice, Boston, Mass., and Joseph C. Wyderko, Dept. of Justice, on brief, for appellee.

Before COFFIN, ALDRICH and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Following a jury trial in the United States District Court for the District of Massachusetts, Anthony DeCologero and Antonio Mazza were convicted of conspiring to possess cocaine with intent to distribute the drug. *See* 21 U.S.C. § 846. Each was sentenced to a twelve year prison term. Their appeals proved fruitless. *United States v. Mazza,* 792 F.2d 1210 (1st Cir.1986).

DeCologero then filed a timely motion to reduce his sentence under Fed.R.Crim.P. 35(b).[1] In the motion, defendant maintained (i) that the sentence was onerous in light of his "severe, chronic, disabling, and worsening medical condition," (ii) that it

---

**1.** Fed.R.Crim.P. 35(b) reads as follows:

*Reduction of Sentence.* A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

was unduly harsh given his family situation, and (iii) that he was not credited for time served while on bail pending trial, though such credits were proper.[2] He requested an evidentiary hearing.

The district court determined that the various grounds upon which the Rule 35 motion rested were each and all unavailing. It found an evidentiary hearing to be unnecessary and, noting its continued belief that "the sentence imposed was appropriate," declined to ease the punishment. This appeal ensued.

## I

We need not pause to summarize the trial evidence, as that soil has already been tilled. *See United States v. Mazza,* 792 F.2d at 1212–14. Accordingly, we proceed to set forth the principles which guide the rather restricted scope of appellate oversight in instances such as this.

We have described a Rule 35(b) motion for reduction of sentence as being "essentially a plea for leniency ... addressed to the sound discretion of the district court." *United States v. Ames,* 743 F.2d 46, 48 (1st Cir.1984) (per curiam), *cert. denied,* 469 U.S. 1165, 105 S.Ct. 927, 83 L.Ed.2d 938 (1985). The chief function of such an initiative is "to allow the district court to decide if, on further reflection, the sentence seems unduly harsh." *Id. See also United States v. Colvin,* 644 F.2d 703, 705 (8th Cir.1981); *United States v. Hill,* 611 F.Supp. 854, 855–56 (D.R.I.1985). Rule 35(b), in a sense, operates as a final glance backward before the sentencing judge takes leave of the case. It affords him one last chance to reappraise the sentence in the albedo of any new or further information about the crime or the criminal which may have arisen in the interim. *See United States v. Colvin,* 644 F.2d at 705; *United States v. Ellenbogen,* 390 F.2d 537, 543 (2d Cir.), *cert. denied,* 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968); *United States v. Hill,* 611 F.Supp. at 855–56. Put another way, the device "offers the sentencing court an opportunity to temper its original sentence." *United States v. Dis' tasio,* 820 F.2d 20, 24 (1st Cir.1987).

■ The rule is not meant to guarantee the defendant an instant replay of the sentencing process. The district court has latitude to refuse to consider submissions which could have been made—but were not—at the time of imposition of sentence. *See United States v. Foss,* 501 F.2d 522, 530 (1st Cir.1974). In the usual case, the court—if unmoved by the plea to reconsider—need not even explain the reasons underlying its denial of the motion. *E.g., United States v. Ursini,* 296 F.Supp. 1152, 1153 (D.Conn.1968). We quite agree with Judge Friendly that,

> [A] motion to reduce does not compel the trial judge to delve so deeply into his original sentencing decision since, as a practical matter, the issue is only whether he feels sufficiently motivated by the information contained in the moving papers and adduced at any hearing to undertake reconsideration of the existing sentence and ultimately perhaps to alter it.

*McGee v. United States,* 462 F.2d 243, 247 n. 8 (2d Cir.1972).

■ The appellant has not invoked Fed. R.Crim.P. 35(a), or otherwise challenged the *legality* of his sentence. Nor has he alleged that the sentence imposed violates the prohibition against cruel and unusual punishment. U.S. Const., Amend. VIII. In the absence of illegality or misinformation of constitutional magnitude, appellate courts have been reluctant to subject discretionary sentencing decisions to substantive review. *See Dorszynski v. United States,* 418 U.S. 424, 443, 94 S.Ct. 3042, 3052, 41 L.Ed.2d 855 (1974); *United States v. Santamaria,* 788 F.2d 824, 827–28 (1st Cir.1986); *United States v. Kimball,* 741 F.2d 471, 475 (1st Cir.1984). Without rote recitation of the salutary considerations which undergird that doctrine, it suffices to say that those reasons apply in full flower—and then some—to the sentencing judge's exercise of discretion under Fed.R. Crim.P. 35(b). Thus, we will disturb a deci-

---

2. The appellant has not pressed the third argument on appeal, so we will not refer to it again.

sion granting or withholding relief under Rule 35(b) only upon a showing "that the trial court grossly abused its discretion." *United States v. Ames,* 743 F.2d at 48. *Accord United States v. Distasio,* 820 F.2d at 24; *United States v. Holt,* 704 F.2d 1140 (9th Cir.1983) (per curiam); *United States v. Atkins,* 618 F.2d 366, 374 (5th Cir.1980); *United States v. Yates,* 553 F.2d 502, 503–04 (5th Cir.1977).

## II

Having painted the backdrop with this broad brush, we turn to DeCologero's argument that his medical condition, and the lack of appropriate treatment for it, warranted a reformulation of his sentence. Before engaging in any specifics, however, we remark that the appellant was sentenced on February 12, 1985 and began serving his time on March 5, 1985 (while his direct appeal was pending). He has been—and remains—incarcerated at the Federal Correctional Institution at Lexington, Kentucky (FCI-Lex), one of the principal medical/correctional facilities in the federal prison system. The district court honored defense counsel's requests for assistance in procuring medical documentation, and the federal authorities, FCI-Lex and the Bureau of Prisons (Bureau), cooperated with the court and with the defendant. As a result, prior to filing the Rule 35(b) motion, DeCologero's lawyer had received all of the pertinent medical records compiled during the appellant's stay at FCI-Lex.

■ We see no reason to describe the state of DeCologero's health in exquisite detail or to debate the fine points of his medical care. It is clear that since 1968, when the defendant suffered a severe back injury in a fall, he has been in less than fine fettle. His symptomatology is painful,

his debility is progressive, and his physical condition has deteriorated over time. By its very nature, incarceration deprives him of the wide choice of health care providers available in the Boston area, and may well interfere with his preferred mode of treatment. (For example, one subsidiary dispute in this case arises out of the reluctance of the prison physicians to furnish appellant with narcotic drugs in lieu of other painkillers.) Yet, some of this is well beside the point. Persons forfeit a variety of freedoms in consequence of proven criminality. And, though it is plain that an inmate deserves *adequate* medical care, he cannot insist that his institutional host provide him with the most sophisticated care that money can buy. *Cf., e.g., Chase v. Quick,* 596 F.Supp. 33, 35 (D.R.I.1984) ("The Constitution requires that correctional facilities meet certain minimum standards of decency, wholesomeness, cleanliness and the like—not that they cater to the individual preference of each inmate").[3]

We readily concede that an infirm prisoner, like DeCologero, might well receive more salubrious or beneficial health care at home than in prison—and certainly, under more comforting circumstances. Yet, that is not a fair comparison. A penitentiary—like any institution—must deal with persons as part of an overall group. As of September 30, 1986, the Bureau maintained a prisoner population in excess of 41,500 men and women. We are not so naive as to think that the Bureau could function at all if it were compelled to match—for each and every inmate—the level of medical care, cuisine, or educational resources that the convict could obtain in his own backyard. To insist on such an unrealistic paradigm would create an administrative nightmare. Valid goals of sentencing—such as

---

**3.** The appellant's brief rails against the "terrible treatment" he has received, but his counsel has selected an unwieldy vehicle to convey this message. As we have noted, the district court found —supportably, we think—that appropriate treatment, medication, and therapy are available to DeCologero at FCI-Lex. Assuming without deciding that Rule 35(b) provides an appropriate mechanism to address such matters, there is certainly no warrant under the rule to probe the point more deeply. The appellant has other,

more suitable, remedies—say, a civil action—to determine definitively whether there has been some sort of deliberate indifference to serious medical needs. *See Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (upholding *Bivens* suit on behalf of federal prisoner deprived of adequate health care); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (invoking 42 U.S.C. § 1983 vis-a-vis state prisoner).

punishment and general deterrence—would be sharply eroded. And in the bargain, we would trample "equal justice under law" into the dust—for the wealthy, able privately to afford a level of services that the system could not offer, would find in their pockets a gilt-edged key to the jailhouse door.

■ We do not minimize the Bureau's responsibilities to afford decent, timely health care to its constituency. But, this obligation is met in full measure by the provision of adequate services: services at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards. "[T]he Government need not promise or guarantee equal resources so long as it appears reasonably probable ... that there will be adequate resources." *United States v. King,* 442 F.Supp. 1244, 1248–49 (S.D.N.Y.1978). *See also United States v. Bundy,* 587 F.Supp. 95, 97 (M.D.Tenn. 1983).

■ The district judge went the proverbial extra mile in this case. He reviewed the voluminous medical records, spoke with the chief of health programs at FCI-Lex about the appellant's regimen, and solicited a report from the physician in charge of DeCologero's institutional care. The judge found that suitable treatment, medication, and therapy have been available to DeCologero at FCI-Lex, that incarceration *per se* does not tend to worsen the defendant's condition, and that FCI-Lex can adequately care for the prisoner. These findings enjoy record support. Given the thoughtful, thorough, and sensitive nature of the district court's inquiry into the claim, and the reasoned dimensions of its response, the charge that the court's discretion was abused seems untenable.

In many respects, DeCologero's case is but a pale pastiche of cases like *United States v. Caesar,* 632 F.2d 645 (5th Cir. 1980). There, the defendant, a paraplegic confined to a wheelchair and admittedly in need of specialized medical attention, appealed the imposition of a jail term. The Fifth Circuit rejected the plea, noting:

> We cannot say that, having considered the defendant's physical condition ... the district court abused its wide discretion by sentencing the defendant to three years imprisonment (well within, incidentally, the statutory maximum), in view of his consistent antisocial conduct in the past.

*Id.* at 646.

Imprisonment is, under any circumstances, a rigorous ordeal. It may well be especially difficult for one whose health is impaired, whose activities are restricted, and whose pain is unremitting. Yet, poor health, in and of itself, should not automatically shield a convicted felon from his just deserts.[4] The delicate balancing of interests and concerns that such a case presents are best considered—as they were here—by the sentencing court. Absent some particularly egregious set of circumstances, not evident on this record, we will not upset the district court's calibration of the scales.

### III

The family hardship prong of the motion can best be described as captious. To be sure, it is unfortunate that the appellant's mother has died and that his father is ailing. Yet, the record unequivocally reflects that the district court considered the likely effects of the lengthy sentence on the defendant's family when sentence was first imposed, and again considered the defendant's family circumstances in rejecting the Rule 35(b) motion. Inasmuch as these factors received due attention, we have no proper warrant to interfere on this score.

■ On the whole, courts have been relatively consistent in their refusal to let predictable sorts of family hardship undermine otherwise appropriate sentencing decisions. *See, e.g., United States v. Campbell,* 711 F.2d 159, 160 (11th Cir.1983) (per curiam); *United States v. Bedrosian,* 631 F.2d 582,

---

4. The court notes, in passing, that the state of the defendant's health—somewhat the same then as now—did not deter him from engaging in the felonious activities which brought him to his present predicament.

583 (8th Cir.1980) (per curiam); *United States v. Hill*, 611 F.Supp. at 856; *United States v. Wiese*, 539 F.Supp. 1208, 1209 (W.D.N.Y.1982); *United States v. Rodriguez*, 444 F.Supp. 163, 164 (S.D.N.Y.1978). We endorse this principle unreservedly. The spectre of harm to innocent family members should not be permitted to insulate a felon from the condign consequences of his criminal deportment, nor to entrammel the execution of a fair and just sentence. "[I]n the final analysis, it is the convicted defendant—not society or the criminal justice system—who bears the onus for such regrettable dislocations." *United States v. Hill*, 611 F.Supp. at 856. The district court did not err in declining to trim DeCologero's sentence because of the burdens which his immurement imposed on his kinfolk.

## IV

■ The appellant's final thrust challenges the district court's refusal to convene an evidentiary hearing. But as we have said before, Rule 35(b) motions "ordinarily do not require an opportunity for oral submission." *United States v. Foss*, 501 F.2d at 529. *Accord United States v. Heller*, 797 F.2d 41, 42 (1st Cir.1986); *United States v. Brummett*, 786 F.2d 720, 723 (6th Cir.1986); *United States v. Kadota*, 757 F.2d 198, 199–200 (8th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 120, 88 L.Ed.2d 98 (1985); *United States v. Nerren*, 613 F.2d 572, 573 (5th Cir.1980) (per curiam); *United States v. Krueger*, 454 F.2d 1154, 1155 (9th Cir.1972) (per curiam). On such a motion, the trial court has considerable latitude to "select the appropriate procedure" for consideration of the proffer. *United States v. Collins Spencer Catch The Bear*, 727 F.2d 759, 762 (8th Cir.1984). The right of a defendant to make allocution—to be heard in his own behalf in mitigation of punishment before the court pronounces sentence—does not apply in the Rule 35(b) context. *See United States v. Foss*, 501 F.2d at 530 n. 3. The district courts, understandably, have been reluctant to expand the discretionary remedy of Rule 35(b) into full-blown satellite litigation. Such chariness has many parallels

elsewhere in the law. *E.g., Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (hearing discretionary in federal habeas review of state criminal convictions); *Amanullah v. Nelson*, 811 F.2d 1, 16–17 (1st Cir.1987) (no right to evidentiary hearing in habeas review of asylum applicant's detention during exclusion proceedings).

There is nothing sufficiently unique about this case to require exemption from the sweep of the general rule. The district court had before it plenteous information concerning DeCologero's health and course of treatment, including but not limited to the entire medical record from FCI-Lex and a detailed report from the appellant's personal physician. The motion papers laid out DeCologero's legal position and an assortment of factual points. The appellant has not identified any data needed to augment the submission which could not have been furnished by affidavit or in like fashion. In short, the district judge had at his fingertips material ample to illuminate the field.

The judge concluded that a "further evidentiary hearing [was not] necessary." We have carefully examined the copious information which the court had before it, and we discern no plausible reason for the court to have departed from the usual practice of deciding Rule 35(b) motions on a paper record.

■ There are limits to what courts can, or should, be expected to do. One such limit is that hearings cannot be convened at the whim of a suitor, made available like popsicles in July, just because a passerby would like to have one. As we noted in *Amanullah v. Nelson*, 811 F.2d at 17, and today reaffirm: "[w]e will not lightly inundate the district courts with makework hearings." It was well within the trial court's discretion to decide that this case did not warrant the extraordinary step of taking live testimony on a run-of-mine motion for reduction of sentence.

## V

We need go no further. For the reasons which we have mentioned, we hold that the

district court did not err either in denying the appellant's Rule 35(b) motion or in failing to schedule an evidentiary hearing to consider DeCologero's pleas in greater detail.

*Affirmed.*