931 F.2d 57
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert PERKINS, Defendant-Appellant.
 No. 90-1620.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1991.
 
 Before RALPH B. GUY, JR. and ALAN E. NORRIS, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Robert Perkins pleaded guilty on November 15, 1988, to a violation of 18 U.S.C. Sec. 1341.[1] The plea was pursuant to a Federal Rule of Criminal Procedure 11 plea agreement, which provided that any prison term imposed would not exceed 18 months. There was no agreement as to a possible fine, and the defendant agreed to make restitution.
 
 
 2
 On January 5, 1989, Perkins was sentenced to six months custody, plus three years probation. As a special condition of probation, the court ordered restitution of $32,622.75 and imposed a $100,000 fine payable within six months. Defendant did not appeal this sentence. However, on May 5, 1989, defendant filed a motion pursuant to Federal Rules of Criminal Procedure 32 and 35, seeking a reduction in the fine and alleging errors in the presentence report.
 
 
 3
 The district judge denied the motion initially and upon reconsideration, and this appeal followed.
 
 
 4
 Upon review, we conclude that the district court should be affirmed.
 
 I.
 
 5
 We first address that portion of defendant's appeal which implicates Federal Rule of Criminal Procedure 32. In the motion filed in the district court the defendant alleged:
 
 
 6
 3. At sentencing, defense counsel raised the issue of Defendant's ability to pay such a large fine, but the Court did not address the matter at any length.
 
 
 7
 4. The information in the presentence report regarding Defendant's financial condition was inaccurate and misleading. Documentation which accurately reflects Defendant's financial condition is attached to this motion.
 
 
 8
 (App. 15).
 
 
 9
 The contention that defendant raised the issue of his ability to pay the fine at the time of sentencing is totally unsupported by the record.[2] The following colloquy took place just prior to Perkins being sentenced:
 
 
 10
 THE COURT: Mr. Sowerby, have you had a chance to receive and to examine the Pre-sentence report?
 
 
 11
 MR. SOWERBY: Yes, Your Honor, I have. I find it to be factually accurate, including, though, on page six, paragraph 26, part C....
 
 
 12
 .............................................................
 
 
 13
 ...................
 
 
 14
 * * *
 
 
 15
 The officer references three offspring, but then only delineates two. And I just want the Court to be aware that Mr. Perkins also has a daughter, Kerri Lynn, who is a student and lives at home.
 
 
 16
 .............................................................
 
 
 17
 ...................
 
 
 18
 * * *
 
 
 19
 Beyond that, Your Honor, I do find it to be factually accurate and have no additions nor deletions to request therefrom.
 
 
 20
 THE COURT: Thank you.
 
 
 21
 Mr. Perkins, have you had an opportunity to examine the Pre-sentence Report?
 
 
 22
 DEFENDANT PERKINS: Yes, I have, Your Honor.
 
 
 23
 THE COURT: Do you find any reason to modify or change the report in any way?
 
 
 24
 DEFENDANT PERKINS: No.
 
 
 25
 THE COURT: Other than the reference to your daughter Kerri.
 
 
 26
 DEFENDANT PERKINS: No, I do not, sir.
 
 
 27
 THE COURT: Do you find it otherwise to be completely accurate?
 
 
 28
 DEFENDANT PERKINS: Yes, I do, Your Honor.
 
 
 29
 (App. at 97-98).
 
 
 30
 After the court announced its sentence, the following exchange took place between Judge Cook and defense counsel:
 
 
 31
 MR. SOWERBY: Your Honor, my client is concerned--I experience some concern in my mind--how he is supposed to come up with $100,000 in six months.
 
 
 32
 THE COURT: Well, I recognize that. And that is a--I will leave that burden or problem to the Defendant. It was one of those considerations that I made in terms of whether I should place him in custody for a much longer period of time or to present the sentence that I did. It was only after a reflection upon the medical condition, the state of the Defendant's family as relates to an extended incarceration, his health, that I determined that the latter sentence should be the one that I would give. And that is what I have done. I will have to leave that to the defendant to work out.
 
 
 33
 MR. SOWERBY: All right. Thank you, Your Honor.
 
 
 34
 (App. at 106).
 
 
 35
 Although we have no trouble accepting defendant's statement that he was surprised by the size of the fine, we are unable to read anything in defendant's comments or those of his attorney which suggest they were alleging an inaccurate presentence report.
 
 
 36
 We recognize that the defendant faced a dilemma of sorts, but we see it as a dilemma of alternate strategies. The trial judge made it clear that the large fine was in lieu of the 18-month custody sentence he was free to impose. Bargaining at that time would have involved Perkins trading dollars for jail time, a trade-off he understandably did not want to make. But he cannot have it both ways. The defendant cannot wait until he has served most of his short jail term, and thus insulated himself from an extension, and then go back and cry "foul" as to the fine, using Federal Rule of Criminal Procedure 32 as the vehicle for raising the issue. Rule 32(c)(3)(D) provides:
 
 
 37
 (D) If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.
 
 
 38
 It is clear that neither defendant nor his counsel alleged any "factual inaccuracy in the presentence investigation report."
 
 
 39
 In addition to the foregoing infirmities in defendant's reliance on Rule 32, we also note that no direct appeal will lie from the denial of a Rule 32 motion of this nature made after the time for a direct appeal of the sentence has expired. That is because the district court has no jurisdiction to entertain such a motion. We addressed this issue directly in United States v. Sarduy, 838 F.2d F.2d 157, 158 (6th Cir.1988), where we stated:
 
 
 40
 In United States v. Fischer, 821 F.2d 557 (11th Cir.1987), the court stated:
 
 
 41
 We hold that Fed.R.Crim.P. 32, standing alone, does not provide the district court with jurisdiction to hear a motion making a post-judgment collateral attack on one's sentence for a Rule 32 violation.
 
 
 42
 Fed.R.Crim.P. 35 provides the jurisdictional base for correction or reduction of a sentence. After a sentence has been imposed, however, Rule 35 motions would have to have been brought within 120 days. Fed.R.Crim.P. 35(b).
 
 
 43
 821 F.2d at 558. Although this circuit has never before had occasion to rule specifically on this issue, we find the conclusion reached by the Eleventh Circuit to be sound and adopt it as the law for this circuit.
 
 II.
 
 44
 We now address the district court's denial of defendant's timely Rule 35 motion. Since defendant's offense was committed before the effective date of the Sentencing Guidelines, he is entitled to rely upon the previous version of Rule 35, which read in pertinent part:
 
 
 45
 (a) Correction of Sentence. The court may correct an illegal sentence at any time and may correct a sentence imposed in all illegal manner within the time provided herein for the reduction of sentence.
 
 
 46
 (b) Reduction of Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked....
 
 
 47
 As to Rule 35(a), Perkins argues his sentence was "illegal" because the fine was excessive and amounted to cruel and unusual punishment, in violation of the eighth amendment. The fine imposed was within the limits provided by the statute. Under such circumstances, the sentence is not subject to review unless founded "upon misinformation of constitutional magnitude." United States v. Tucker, 404 U.S. 443, 447 (1972); United States v. Brummett, 786 F.2d 720, 723 (6th Cir.1986). Assuming that there was misinformation here, it certainly was not of a constitutional magnitude.[3]
 
 
 48
 We note in passing that Congress has recently enlarged the capacity of federal judges to mete out much larger sentences than in the past, and it is clearly the intent of Congress that fines can constitute very substantial punishment and not serve as a mere wrist-slap. This is particularly true when fines are assessed instead of incarceration.
 
 
 49
 That portion of defendant's motion involving Rule 35(b) is a plea for leniency and is addressed to the discretion of the trial judge. We will reverse the district judge only upon a showing of a gross abuse of discretion. We subscribe to the First Circuit's view on this issue:
 
 
 50
 In the absence of illegality or misinformation of constitutional magnitude, appellate courts have been reluctant to subject discretionary sentencing decisions to substantive review. Without rote recitation of the salutary considerations which undergird that doctrine, it suffices to say that those reasons apply in full flower--and then some--to the sentencing judge's exercise of discretion under Fed.R.Crim.P. 35(b). Thus, we will disturb a decision granting or withholding relief under Rule 35(b) only upon a showing "that the trial court grossly abused its discretion."
 
 
 51
 United States v. DeCologero, 821 F.2d 39, 41-42 (1st Cir.1987) (citations omitted).
 
 
 52
 We are unable to find a gross abuse of discretion under the facts presented here. In explaining his refusal to grant relief to the defendant, Judge Cook stated:
 
 
 53
 Perkins' fiscal status was made known to this Court after --not before--the imposition of the sentence. Had this court been made aware of Perkins' claimed financial problems by his counsel prior to the imposition of the sentence, another remedy would, in all probability, have been fashioned.[3] Perkins, through this questionable litigation strategy, is now attempting to secure an unjustifiable lenient sentence (probation with a minimal fine) for the commission of this felony which, in the judgment of this Court and in view of his personal history, would mandate a substantial fiscal penalty or, in the alternative, an extended period of incarceration.
 
 
 54
 (App. 69).
 
 
 55
 We have no way of knowing whether Perkins set out to manipulate the system, but the end result of his failure to raise his financial condition in a timely manner would have that effect nonetheless. Under these circumstances, we must defer to the judgment of the district judge.
 
 
 56
 AFFIRMED.
 
 
 
 [3]
 Prior to the sentence hearing, this Court met with two colleagues and a representative from the Probation Office for a "Sentencing Council." During the meeting, this Court received recommendations which ranged from an imposition of a substantial period of incarceration to the assessment of a heavy fine upon Perkins. These suggestions were submitted on the basis of the information within the Presentence Report, including the financial information which had been submitted to the Court, through the Probation Department. On the basis of the Presentence Report, which Perkins acknowledged to be correct immediately prior to his receipt of the sentence, this Court made its judgment
 
 
 [1]
 The mail fraud, which was the subject of the criminal charges against Perkins, involved a fraudulent insurance claim growing out of an arson fire that destroyed a cabin owned by Perkins
 
 
 [2]
 Defendant makes no claim that he was not advised at the time of the tendering his guilty plea as to the possible fine that could be imposed
 
 
 [3]
 Perkins' own financial statement on a Comerica Bank form dated January 1989 reflected a net worth of $224,300. The probation department report indicated a net worth substantially in excess of that amount. Even if the latter were in error, the undisputed net worth of Perkins, including the residence, was approximately twice the amount of the fine
 
 
 [3]
 Prior to the sentence hearing, this Court met with two colleagues and a representative from the Probation Office for a "Sentencing Council." During the meeting, this Court received recommendations which ranged from an imposition of a substantial period of incarceration to the assessment of a heavy fine upon Perkins. These suggestions were submitted on the basis of the information within the Presentence Report, including the financial information which had been submitted to the Court, through the Probation Department. On the basis of the Presentence Report, which Perkins acknowledged to be correct immediately prior to his receipt of the sentence, this Court made its judgment