**UNITED STATES of America, Appellee,**

v.

**Barbara HILTON, Defendant, Appellant.**

**No. 91–1423.**

United States Court of Appeals,
First Circuit.

Heard Sept. 6, 1991.

Decided Oct. 7, 1991.

J. Hilary Billings, Bangor, Me., for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., and Jay P. McCloskey, Asst. U.S. Atty., Augusta, Me., were on brief, for U.S.

Before CAMPBELL, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

This criminal appeal boils down to a single assignment of error. The issue presented is whether the district court erred in failing to depart downward at sentencing because of the defendant's impaired health. In the circumstances, we lack appellate jurisdiction.

I

The facts, insofar as they are pertinent to this appeal, can be succinctly summarized. Defendant-appellant Barbara E. Hilton was named in two counts of a four-count superseding indictment returned by a federal grand jury in the District of Maine. Count one charged that Hilton and six others conspired to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988) and 18 U.S.C. § 2 (1988). Count two charged that Hilton and one of the other six coconspirators distributed cocaine in violation of two of the same statutes. On December 19, 1990, Hilton pleaded guilty to both counts. At sentencing, the district court found that 170.1 grams of cocaine were involved. The court also found that Hilton had accepted responsibility for her criminal conduct. It ascertained the guideline sentencing range (GSR) to be 21 to 27 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table) (offense level 16; criminal history category I). Neither the government nor the defendant contest this conclusion.

Hilton sought a downward departure un-

der U.S.S.G. §§ 5K2.0 and 5H1.4.[1] She produced extensive medical documentation evidencing that she had suffered for many years from a condition known as calcinosis universalis, a form of dermatomyositis.[2] Based on this history and the concomitant need for close medical supervision, Hilton's counsel asked the court to depart downward because of Hilton's "extraordinary physical impairment." U.S.S.G. § 5H1.4. The court refused, finding specifically that the federal prison system had the capacity to "accommodate the defendant's medical needs" and that the defendant's condition was not "so extraordinary as to justify a sentence of no imprisonment under [§] 5H1.4." The court then sentenced Hilton to a jail term of twenty-one months. The court directed that Hilton be incarcerated at the Federal Correctional Institution at Lexington, Kentucky, an institution we have described as "one of the principal medical/correctional facilities in the federal prison system." *United States v. DeCologero*, 821 F.2d 39, 42 (1st Cir.1987). This appeal followed.

## II

We have said, with echolalic regularity, that as a general rule "a district court's refusal to depart, regardless of the suggested direction, is not appealable." *United States v. Romolo*, 937 F.2d 20, 22 (1st Cir.1991). *Accord, e.g., United States v. Porter*, 924 F.2d 395, 399 (1st Cir.1991); *United States v. Harotunian*, 920 F.2d 1040, 1044 (1st Cir.1990); *United States v. Sanchez*, 917 F.2d 607, 613 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1625,

113 L.Ed.2d 722 (1991); *United States v. Ocasio*, 914 F.2d 330, 333 (1st Cir.1990); *United States v. Ruiz*, 905 F.2d 499, 508–09 (1st Cir.1990); *United States v. Jimenez–Otero*, 898 F.2d 813, 815 (1st Cir.1990); *United States v. Pighetti*, 898 F.2d 3, 4–5 (1st Cir.1990); *United States v. Tucker*, 892 F.2d 8, 10 (1st Cir.1989). There is, of course, an exception to the rule: "appellate jurisdiction may attach in those few situations where the lower court's decision not to depart is based on the court's mistaken view that it lacks the legal authority to consider a departure." *United States v. Romolo*, 937 F.2d at 22. But, that exception only applies if the judge erroneously concluded that he or she "lacked statutory authority to consider departing," not when an appellant, disappointed by the judge's failure to essay a departure, tries to challenge either the court's "declination to exercise admitted discretion" or the court's "application of settled law to idiosyncratic facts." *Id.* at 23.

In an effort to slide within the narrow confines of the exception, Hilton asserts that the district court mistook the law in two respects. We examine each assertion separately.

### A.

First, Hilton claims that the district court ruled, erroneously, that U.S.S.G. § 5H1.4 allows only two choices: a sentence within the GSR or a sentence of no imprisonment. This ruling, Hilton tells us, was wrong because section 5H1.4 also allows a downward departure shortening, although not completely eliminating, the in-

---

1. U.S.S.G. § 5K2.0, replicating the applicable statute, provides that the court may impose a sentence above or below the GSR if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). Section 5H1.4 suggests a possible ground for such a departure. It states:

   Physical condition is not ordinarily relevant in determining whether a sentence should be outside the guidelines or where within the guidelines a sentence should fall. However,

an extraordinary physical impairment may be a reason to impose a sentence other than imprisonment.

U.S.S.G. § 5H1.4, p.s.

2. In a letter to the probation department, Dr. O.L. Haynes, Jr., the defendant's attending physician, described the condition as one in which recurrent calcium deposits form under the skin. Often, they become infected. They then require immediate evaluation by a physician and surgical intervention (usually incision and drainage). The defendant apparently experienced roughly thirty such episodes during the three years prior to the date when sentence was imposed.

carcerative component of a defendant's sentence. We agree with Hilton's interpretation of section 5H1.4, but we do not accept her characterization of the district court's ruling.

Despite the language in which it is couched, U.S.S.G. § 5H1.4 clearly contemplates that, if an extraordinary physical impairment is shown to exist, a sentencing court is not faced with an all-or-nothing choice between GSR-range imprisonment or no imprisonment, but may lawfully decide to impose a reduced prison sentence below the GSR. *See United States v. Ghannam,* 899 F.2d 327, 329 (4th Cir.1990) ("Section 5H1.4's observation that extraordinary impairment might justify an alternative to imprisonment does not preclude the possibility that impairment might also warrant a shorter sentence. The greater departure, no imprisonment, includes the lesser departure, shorter imprisonment."). The extent of any such departure would, of course, have to be reasonable in light of the circumstances of the particular case. *See United States v. Ocasio,* 914 F.2d at 337 ("Where valid grounds for departure are present, we will uphold the sentencing judge's resolution of the matter so long as the circumstances warranting the departure, and the departure's direction and extent, are in reasonable balance."); *United States v. Diaz–Villafane,* 874 F.2d 43, 49–51 (1st Cir.) (similar), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

■ We do not believe, however, that the district court read section 5H1.4 in a different or more restrictive manner. To be sure, the court stated in *haec verba* that it "d[id] not find the defendant's physical condition to be so extraordinary as to justify a sentence of no imprisonment under [§] 5H1.4." But that statement cannot, as Hilton would have it, be taken in a vacuum.

The quoted comment was made in direct response to the defense's oft-repeated argument that Hilton should not be incarcerated *at all.* In a written response to the presentence investigation report, for example, the defense staked out "the defendant's position" as being "that her illness constitutes an extraordinary physical impairment which proves an appropriate reason to impose a sentence other than imprisonment under § 5H1.4." At the sentencing hearing, defense counsel argued eloquently for probation or home confinement, that is, for a sentence completely eliminating "the risks of what might confront [the defendant] in the federal prisons' medical facilities." When, as here, a party has couched her plea in terms of a yea-or-nay choice between imprisonment or no imprisonment, we cannot read too much into the judge's adoption of the party's parlance in denying the plea.

Our disinclination to give a crabbed interpretation to the district court's comments is fortified because, here, the record shows that the issue the parties purposed to present below, and which the district court proposed to decide, was not limited to GSR-range imprisonment versus no imprisonment. At the presentence conference, the judge stated his understanding of the issue to be "whether there [are] grounds for a downward departure because of the defendant's physical condition." In the procedural order entered thereafter, the issue framed was "[w]hether the defendant's physical condition calls for a downward departure." In resolving the issue as phrased, the court, if the proof warranted, could certainly have departed downward, but stopped short of sparing Hilton from prison entirely. Moreover, nothing in the record suggests that the court or counsel discussed an all-or-nothing approach at any time or that any of them viewed the departure decision as limited to a choice between GSR-range imprisonment, on the one hand, and no imprisonment, on the other hand.

We think it is unrealistic to expect that busy trial judges, ruling from the bench, will be infinitely precise in their choice of language. Substance must outrank form. For that reason, and in the interests of accuracy and fairness, we have consistently endeavored to read a sentencing court's remarks in context rather than in artificial isolation. *See, e.g., United States v. Brown,* 899 F.2d 94, 98–99 (1st Cir.1990). Doing so here, we are satisfied that the court below correctly understood the scope

of its authority under U.S.S.G. § 5H1.4. While in retrospect the court might have phrased its finding somewhat more artfully, its meaning was nevertheless sufficiently clear.[3]

### B.

■ Hilton also claims that the district court mistook the law because it did not believe that U.S.S.G. § 5K2.0 furnished a basis for downward departure independent of U.S.S.G. § 5H1.4. The appellant's claim rests principally on a colloquy between her counsel and the court at sentencing:

> **Mr. Billings** [defense counsel]: Your Honor, I have a question about the court's finding. Does the court find that Barbara Hilton's medical condition does not constitute a basis as a matter of law from which there could have been a departure or is it the court's finding that it might be a basis in law, but in exercising the court's discretion, it's [sic] decided not depart?
>
> **The Court:** My finding is that, under 5H1.4, that Ms. Hilton's physical condition is as a matter of law not ordinarily relevant in determining sentence either outside the Guidelines or inside the Guidelines, and that only in cases of an extraordinary physical impairment is there a reason to impose a sentence other than imprisonment, and that that Guideline 5H1.4, demonstrates that the Commission in fact took into consideration physical condition and where it should be used, and therefore, under the case law that I'm not justified in considering physical condition apart from that in determining whether there should be a downward departure. So I'm deciding, I guess you could say as a matter of law, that I'm not entitled to consider it beyond what's provided in 5H1.4.

We have acknowledged that, under section 5K2.0, departures can be grounded on either qualitative factors (i.e., factors not taken into account by the Sentencing Commission) or quantitative factors (i.e., factors which, while considered by the Commission, are present to an extraordinary degree in a particular case). *See United States v. Sklar,* 920 F.2d 107, 115–16 (1st Cir.1990); *United States v. Brown,* 899 F.2d at 97; *see also United States v. Pena,* 930 F.2d 1486, 1494–95 (10th Cir. 1991). The appellant in effect argues that, even after deciding not to utilize section 5H1.4 in her case, the court should have considered a quantitative departure under section 5K2.0 because her condition was more extreme than the Sentencing Commission likely envisioned.

Under section 5H1.4, "[p]hysical condition is not ordinarily relevant" in the departure calculus. We believe that, in a case like this one, section 5H1.4's exception for "extraordinary physical impairment" is coextensive with section 5K2.0's "mitigating circumstance" requirement insofar as departures are concerned. Put another way, the parameters of sections 5H1.4 and 5K2.0 are completely congruent when, as here, the central inquiry involves the degree to which imprisonment unduly imperils a defendant's physical health; under either section, a downward departure would necessitate the existence of some *extraordinary* physical impairment. *See* U.S.S.G. § 5H1.4 (expressly requiring "extraordinary physical impairment" as a prerequisite to sentencing outside the guidelines); *United States v. Sklar,* 920 F.2d at 116 (quantitative departure requires that considered circumstance "far exceed the ordinary"); *United States v. Studley,* 907 F.2d 254, 258–59 (1st Cir.1990) (similar). We can think of no way—and the appellant has suggested none—in which Hilton's physical impairment could be unextraordinary for purposes of section 5H1.4 and, at the same time, sufficiently out of the ordinary as to form the basis for a quantitative

---

**3.** Our determination is not swayed because the district court, in the so-called memorandum of sentencing judgment, composed the day after sentence was imposed, emphasized the negative in writing that the defendant's condition was not "so extraordinary as to justify a sentence of *no* imprisonment...." We view this as merely another example that the court was responding head-on to the defense's plea that Hilton should be spared from incarceration.

departure under section 5K2.0.[4]

That ends the matter. The district court found, supportably, that the defendant did not suffer from an extraordinary physical impairment within the meaning of U.S.S.G. § 5H1.4 because the Bureau of Prisons could adequately accommodate her medical needs. This finding foreclosed resort to U.S.S.G. § 5K2.0.[5]

### III

We need go no further. In the case at hand the district court plainly believed that, given adequate proof, it had the power to depart downward in order to ameliorate the consequences of an extraordinary physical impairment, but the court declined to exercise that ostensible power, concluding that there was no sufficiently extraordinary physical impairment. At bottom, then, the appellant seeks nothing more than to challenge the district court's discretionary refusal to depart downward. In such circumstances, the rule of nonappealability must prevail.

The appeal is dismissed for want of appellate jurisdiction.

---

**4.** In regard to section 5K2.0, the appellant has argued only for a quantitative departure. At any rate, because a defendant's "[p]hysical condition," in general, was clearly considered by the Sentencing Commission in drafting the guidelines, there could be no basis for a qualitative departure. *See, e.g., United States v. Pozzy,* 902 F.2d 133, 139 (1st Cir.) (invalidating qualitative downward departure based on defendant's pregnancy), *cert. denied,* — U.S. —, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990).

**5.** We do not minimize either the unusual nature or painfulness of the defendant's disease. Yet, even when an ailment is both rare and serious, a downward departure does not necessarily ensue. If the condition can be adequately treated in a prison setting, and no other countervailing considerations pertain, then in such event, resort to section 5H1.4 (and, in quantitative terms, section 5K2.0) is not mandatory. After all, as we wrote in the pre-guidelines era, "poor health, in and of itself, should not automatically shield a convicted felon from h[er] just deserts." *United States v. DeCologero,* 821 F.2d at 43.