UNITED STATES of America

v.

James William GIANNETTA.

Crim. No. 86–00035–P–C.

United States District Court,
D. Maine.

March 4, 1992.

William H. Browder, Jr., Asst. U.S. Atty., U.S. Dept. of Justice, Portland, Me., for plaintiff.

Judy Potter, Cape Elizabeth, Me., for defendant.

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE

GENE CARTER, Chief Judge.

The matter is now before the Court on Defendant's Motion for Reduction of Sentence (Docket No. 63), filed in November of 1990, and on which decision has been delayed to this time at Defendant's request. This Defendant and his case have occupied the Court's attention off and on for the past several years. The entire history of the case, in which Defendant was admitted to probation and subsequently proved to be one of the worst violators of probationary terms and conditions in the history of the district, can best be captured by a review of the following opinions: *United States v. Giannetta*, 695 F.Supp. 1254 (D.Me.1988); *United States v. Giannetta*, 711 F.Supp. 1144 (D.Me.1989); *United States v. Giannetta*, 717 F.Supp. 926 (D.Me.1989); *United States v. Giannetta*, 909 F.2d 571 (1st Cir.1990).

The Court's prior decision to admit Defendant to probation was based upon what was represented to the Court at that time to be a long record of significant cooperation with law enforcement authorities in connection with illicit drug transactions which had yielded, according to the Government's representations, significant benefits to the Government in its enforcement effort. Since being sentenced to a fifteen-year sentence upon violation of the terms

and conditions of his original probation, Defendant now comes back to the Court displaying a record of additional cooperational activities with the Government which has occurred since the time of the imposition of the fifteen-year sentence. He now seeks, pursuant to Rule 35(b), to have this Court reduce his sentence in consideration of his cooperation.

The Court approaches such a motion on a predicate of solidly articulated learning from the Court of Appeals for the First Circuit. The Court has said that such a motion is "essentially a plea for leniency ... addressed to the sound discretion of the district court." *United States v. Ames*, 743 F.2d 46, 48 (1st Cir.1984) (*per curiam*), *cert. denied*, 469 U.S. 1165, 105 S.Ct. 927, 83 L.Ed.2d 938 (1985), cited with approval in *United States v. DeCologero*, 821 F.2d 39, 41 (1st Cir.1987). In *DeCologero* the Court further observed:

> The chief function of such an initiative is 'to allow the district court to decide if, on further reflection, the sentence seems unduly harsh.' ... Rule 35(b), in a sense, operates as a final glance backward before the sentencing judge takes leave of the case. It affords him one last chance to reappraise the sentence in the albedo of any new or further information about the crime or the criminal which may have arisen in the interim ... Put another way, the device 'offers the sentencing court an opportunity to temper its original sentence' ...
>
> The rule is not meant to guarantee the defendant an instant replay of the sentencing process ... In the usual case, the Court—if unmoved by the plea to reconsider—need not even explain the reasons underlying its denial of the motion.

*United States v. DeCologero*, 821 F.2d at 41 (citations omitted). The Court, since *DeCologero*, has endorsed its proposition "that the chief function of a Rule 35(b) motion is merely 'to allow the district court to decide if, on further reflection, the sentence seems unduly harsh.'" *United States v. Twomey*, 845 F.2d 1132, 1134 (1st Cir.1988).

This Court has had as intensive a learning experience with this Defendant as it would wish that this Defendant might have had with the processes and rigors of the federal criminal justice system. The Court, over a long period of time, has expressed its conclusions, learned from hard, direct experience with the Defendant, about the state of his rehabilitation, his capacity for social living on a responsible basis, and his willingness to abide by the rules of law which govern his conduct in an organized society. The Court stated in 1988, in considering whether the Defendant should be admitted to bail pending resolution of his probation violations, the following:

> The evidence taken out at the preliminary hearing and at the bail hearing displays a course of conduct over many months of the period that Probationer has been at large on probation since February of 1988, constituting, to a high degree of likelihood, numerous individual illegal acts conducted by Probationer for profit, as well as the implementation of various aspects of ongoing and continuous schemes to defraud members of the public of their property. The evidence at the preliminary hearing resulted in a finding of probable cause that such offenses had been committed by Probationer. The evidence taken at the bail hearing, far from dispelling in any way the validity of those conclusions, enhances their probative force and indicates some instances of additional conduct of a criminal nature. Since the initial Petition for Probation Action was filed on August 24, 1988, there has been a supplement thereto ... alleging in considerable detail various additional instances of violation of conditions (1), (2), and (10) of the Probationer's probation period.
>
> ... [T]he record demonstrates that during most of the period he has been admitted to probation, there is good reason to believe that he has been continuously involved not only in violation of the terms and conditions of his probation, but in conduct constituting a continuing and ever-expanding pattern of criminal violations. Such a person, in the view of this Court, is, within the meaning of the

statute, one who poses a danger to the safety of other persons and of the community if released on bail ... The Court has maintained this Probationer under the closest kind of supervision while he has been admitted to probation and is well aware that he has been aware of the closeness of that scrutiny by Officer Frost. The Court is fully persuaded that there is no condition, or combination of conditions, which the Court could now impose in conjunction with admission to bail that would be effective to remove the danger posed by this Defendant's propensity for ongoing criminal activities.

*United States v. Giannetta*, 695 F.Supp. at 1256. The Court next had opportunity to expatiate upon the conduct of this Defendant while he was admitted to probation in its Memorandum of Decision Denying Defendant's Motion to Suppress Evidence From Consideration at the Probation Violation Proceedings a year later. *See United States v. Giannetta*, 711 F.Supp. 1144 (D.Me.1989). Some two-and-a-half months later, in ruling upon the Petition for Probation Revocation after an extensive examination of the facts, the Court had the following to say by way of this Defendant's capacity for peaceable, law-abiding living:

The evidence before the Court demonstrates that this Defendant has had throughout the period of his admission to probation the utmost disdain for even the most nominal obligations he undertook as part of his probation and a contemptuous disrespect of the law. It has been amply demonstrated that Defendant is the knowing, deliberative, and arrogant architect of his own unhappy straits. Any suggestion that his plight is in any respect the result of any defect in Probation Officer Frost's performance of his duties is, in the real world of criminal rehabilitation, fatuous in the extreme.

The Court simply cannot disregard Defendant's infractions of the conditions of his probation. The flagrant circumstances surrounding the infractions require that probation be revoked. Defendant has clearly shown himself unable to conform to the conditions of his proba-

tion even after it was plain to him that Probation Officer Frost, through his June 30 search, would assuredly know of his prior violations. Defendant cannot be relied upon in the future to conduct himself as the conditions of probation require or to conform his conduct to any acceptable approximation of the role of a law-abiding person.

*United States v. Giannetta*, 717 F.Supp. at 933–34.

The Court is not persuaded that Defendant's latest round of cooperative activities with the Government represents any rehabilitation of his previously determined criminal bent. This activity is simply another round of the same self-serving, opportunistic conduct by which he has continuously baited the most gullible members of the law enforcement community and by which he gulled this Court into placing him, with illuminating if disastrous consequences, on probation at the first sentencing. The Court is morally certain that the cooperative conduct reflected in the presentation most recently made to the Court is not motivated by any sense of genuine remorse for Defendant's past behavior or any desire to atone for past wrongful acts. He remains, in the view of the Court, as unreconstructed as when the Court last appraised his capacity for responsible, law-abiding conduct.

Even these law enforcement officers who now appear in his behalf on the motion shy away from every opportunity offered them by the Court to vouch, as a matter of their own personal moral judgment, for this Defendant's present capacity to obey the law and to be a responsible citizen. None of the officers is willing to say more than to describe his activities of which they have knowledge and attest that Defendant is "very intelligent," an observation that has not previously escaped the Court's notice. The Court respects their reasons and judgment for so limiting their approbation of this Defendant's present capacity to function in accordance with legal norms of conduct if at large, once again, in society; their sense of danger is a pale reflection of the Court's own.

The Court remains satisfied that the sentence imposed on this Defendant is not unduly harsh, but on the contrary, that it is fair punishment for the offense conduct in the circumstances known to the Court when it was imposed and that further leniency is not in order. The Court is also satisfied that the sentence provides only a minimum necessary period of protection to the public from a defendant who will almost certainly revert to criminal conduct on his release from that term of incarceration unless significant progress is made in his rehabilitation. The period of incarceration is barely adequate, if at all, for any meaningful rehabilitative progress with so difficult a case as this Defendant presents.

Little rehabilitative progress has been made to date, principally because the prosecutors, zealous to pursue crime, apparently beyond every other consideration, and the Bureau of Prisons, for reasons unfathomable, have conspired to defeat the Court's goal of rehabilitation for this Defendant through imprisonment by indulging his ability to manipulate the system once again for his own advantage. *The Bureau of Prisons would be well advised, in society's best interests and in the most wise performance of its own proper functions, to focus on the need of this Defendant for rehabilitative attention and to attempt to do something about that need rather than to succumb at every opportunity to the machinations of his guile and the blandishments of hungry prosecutors.* Defendant should be returned to a properly selected penal environment where some attention can be directed to serious and effective efforts to achieve some progress in his rehabilitation, as the Court originally intended when it imposed the sentence.

The Court will seriously opine that this Defendant should not, *must not,* be admitted to parole as the result of any *pro forma* decision to clear a bed in some penal institution. The decision to admit him to parole should be the result of clearly focused, individual evaluation of the Defendant which reflects a deliberate and intelligent assessment of whether he has yet developed the ability to subjugate his arrogance and unbridled sense of self-interest to the extent necessary to make him some kind of a reasonable bet not to recidivate. Any other course will leave the parole authorities suffering from the syndrome of *ovum in facie* that has afflicted so many others who have participated in this case.

The prosecutors should also have learned by now that they invariably end up the hapless dupes of this Defendant's manipulative skills and superior intelligence, and they should pass on to prey less dangerous to their reputations for sober thought.

The motion is hereby DENIED.

So ORDERED.