USCA1 Opinion

 

 February 1, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1470 UNITED STATES, Appellee, v. GARRY T. WADE, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Cyr and Stahl, Circuit Judges, ______________ and DiClerico,* District Judge. ______________ _____________________ Peter B. Krupp, Federal Defender Office, for appellant. ______________ Jeanne M. Kempthorne, Asistant United States Attorney, with _____________________ whom Donald K. Stern, United States Attorney, and Sheila W. ________________ _________ Sawyer, Assistant United States Attorney, were on brief for ______ appellee. ____________________ ____________________  ____________________ * Of the District of New Hampshire, sitting by designation.  DiClerico, District Judge. The defendant, Garry T. ______________ Wade, appeals his conviction and sentence for bank robbery in violation of 18 U.S.C.A. 2113(a). He asserts that the evidence introduced at trial was not sufficient to support a conviction under the statute. He further asserts that the district court's refusal to depart downward was based on an erroneous belief that the court lacked the authority under the guidelines to do so. We affirm the conviction. We lack jurisdiction to review the sentence. I I BACKGROUND BACKGROUND On September 11, 1992, the Boston Five Cent Savings Bank, 569 Washington Street, Boston, Massachusetts, was robbed shortly after 9:00 a.m. The bank was federally insured. A male, acting alone, presented a teller with a handwritten robbery note. According to a bank audit, the teller gave the robber $1,185.10. The robber fled from the bank on foot. The bank's video sur- veillance system recorded the robbery and it was also witnessed by others in the bank. On May 23, 1993, the defendant was indicted on one count of bank robbery under 18 U.S.C.A. 2113(a) by a Grand Jury sitting in Boston, Massachusetts. On January 28, 1994, the defendant was convicted by a jury in United States District Court for the District of Massachusetts. On April 20, 1994, the trial judge sentenced the defendant to prison for 210 months with two years supervised release and a special assessment of $50.00. This appeal followed. II II SUFFICIENCY OF THE EVIDENCE SUFFICIENCY OF THE EVIDENCE The court's standard of appellate review for challenges based on the sufficiency of the evidence is settled. "[O]ur task is to review the record to determine whether the evidence and reasonable inferences therefrom, taken as a whole and in the light most favorable to the prosecution, would allow a rational jury to determine beyond a reasonable doubt that the defendants were guilty as charged." United States v. DeMasi, No. 92-2062, _____________ ______ slip op. at 16 (1st Cir. Oct. 26, 1994) (quoting United States v. _____________ Mena-Robles, 4 F.3d 1026, 1031 (1st Cir. 1993), cert. denied, 114 ___________ _____ ______ S. Ct. 1550 (1994), modified on other grounds sub nom., United ____________________________________ ______ States v. Piper, No. 94-1197 slip op. (1st Cir. Sept. 8, 1994)). ______ _____ We credit both direct and circumstantial evidence but do not weigh the relative weight of the evidence or make credibility determinations. United States v. Loder, 23 F.3d 586, 589-90 (1st _____________ _____ Cir. 1994); Mena-Robles, 4 F.3d at 1031; United States v. ___________ ______________ Echeverri, 982 F.2d 675, 677 (1st Cir. 1993). Rather, "the jury _________ is at liberty to select freely among a variety of reasonable alternative constructions of the evidence." Loder, 23 F.3d at _____ 590 (citing United States v. Smith, 680 F.2d 255, 259 (1st Cir. _____________ _____ 1982), cert. denied, 459 U.S. 1110 (1983)). As a result, we _____ ______ affirm convictions so long as the jury verdict finds support in a -3- "plausible rendition of the record," United States v. Ortiz, 966 _____________ _____ F.2d 707, 711 (1st Cir. 1992), cert. denied, 113 S. Ct. 1005 _____ ______ (1993)), even if a verdict "other than one of guilt could reasonably have been reached." DeMasi, slip op. at 16; see ______ ___ United States v. Vavlitis, 9 F.3d 206, 212 (1st Cir. 1993) ______________ ________ ("government need not disprove every reasonable hypothesis of innocence" where record supports verdict beyond a reasonable doubt). To obtain a conviction for bank robbery, the government must prove beyond a reasonable doubt the identity of the defendant as the robber. See 18 U.S.C.A. 2113(a) ("whoever, by ___ force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property"). The defendant complains that the circumstantial evidence placing him at the scene of the crime, namely the forensic evidence related to his fingerprints and handwriting, is "too weak to support a reasonable inference of guilt."1 The defendant argues that, under a line of "fingerprints only" cases, identity cannot be established solely by forensic evidence found on a movable object at the crime scene absent sufficient evidence that the fingerprints were placed on the object at the time of the crime. We have not yet addressed the "fingerprints only" issue. The defendant is correct that other circuits have, under various circumstances, struck down convictions based solely on  ____________________ 1 For purposes of this appeal, the defendant does not dispute that he wrote the demand note used in the bank robbery. -4- fingerprints obtained from movable items. See, e.g., Mikes v. ___ ____ _____ Borg, 947 F.2d 353, 356-57, 360-61 (9th Cir. 1991), cert. denied, ____ _____ ______ 112 S. Ct. 3055 (1992); United States v. Corso, 439 F.2d 956, 957 _____________ _____ (4th Cir. 1971); United States v. Collon, 426 F.2d 939, 942 (6th _____________ ______ Cir. 1970). Conversly, convictions are upheld on appeal where the trial record includes incriminating evidence beyond that found on the movable object. See, e.g., United States v. Luna, ___ ____ _____________ ____ 21 F.3d. 874, 883-84 (9th Cir. 1994) (bank robbery conviction not based only on fingerprints where bank teller testified that robber, like defendant, had tattoo on neck); McMillan v. G mez, ________ _____ 19 F.3d 465, 469 (9th Cir.), cert. denied, 115 S. Ct. 170 (1994) _____ ______ (conviction not based only on fingerprints where evidence indicated that defendant's fingerprints "could have only been put on [movable object] at a time very close to the murder"); United ______ States v. Field, 875 F.2d 130, 136-37 (7th Cir. 1989) (conviction ______ _____ not based only on fingerprints where there was "plenty of evidence from which the jury could infer" that defendant placed fingerprints on money orders during unlawful alteration). We review the record to determine if the jury was presented with sufficient evidence to convict the defendant under the statute. The government introduced the handwritten demand note used in the robbery with the following appearing on it: Good morning I will be empting [sic] your drawer this morning no die no tricks [sic] I have a bomb and gun that will self destruct immediately so dont [sic] do anything stupid thank you!!! -5- An FBI fingerprint specialist with nearly thirty years' experience testified that, based on a comparison of the defendant's fingerprints and those present on the demand note, he was certain the defendant had handled the demand note. An FBI forensic document examiner with twenty-seven years' experience testified that, based on a comparison of the handwriting on the demand note and a written exemplar provided by the defendant, he was reasonably certain that the same individual wrote on both sheets of paper. The incriminating nature of the demand note and related testimony by two FBI experts is obvious. However, we need not determine whether evidence related to this "movable" object alone is sufficient to identify the defendant as the government also adduced other evidence. Isabel Araujo, the bank teller who received the demand note and handed over the cash, testified that the robber was a black male dressed in a multi-colored black, white and red jacket with a baseball hat. She "guesstimated" that he was approximately six feet tall, explaining that she determined the measurement by comparison to her father whom she knew to be approximately that height. Araujo did concede, on both direct and cross-examination, that immediately following the robbery she had reported to police officials that the robber was somewhat shorter (between 5'7" and 5'9"). She also testified that she did not remember if the robber had facial hair.2  ____________________ 2 A prosecution witness, State Police Sergeant Michael Tobin, testified on cross-examination that Araujo told him that the robber was clean-shaven. -6- The government also introduced a videotape, retrieved from the bank's security cameras, which depicted the interior of the bank during the robbery and showed Araujo and the robber. The defense introduced a still photograph electronically reproduced from the videotape, again depicting the robber at the scene of the crime.3 The defendant was present in the courtroom during trial. The jury had the opportunity to compare the testimonial and photo-graphic evidence of the robber's physical characteristics with the outward appearance of the defendant. As part of the deliberative process, the jury was entitled to assess witness credibility and to weigh the evidence adduced by both sides.4 Based on our review of the entire record in the light most favorable to the prosecution, we conclude that the evidence introduced at trial would allow a rational jury to find, beyond a reasonable doubt, that the defendant was the robber and to convict the defendant for bank robbery. III III REFUSAL TO DEPART UNDER THE GUIDELINES REFUSAL TO DEPART UNDER THE GUIDELINES  ____________________ 3 We have reviewed both the videotape and the still photograph and acknowledge that neither presents a particularly sharp image of the robber. 4 At trial, the defendant introduced evidence to support his contention that he differed in physical appearance from the robber in terms of height and facial hair. -7- The defendant next requests a de novo review of his __ ____ sentence on the grounds that the district court erroneously concluded it lacked the authority to depart downward under the guidelines.5 The government responds that the district court's refusal to depart was discretionary and unreviewable on appeal. We agree. By statute, a defendant may appeal a sentence based on an incorrect application of the sentencing guidelines. 18 U.S.C.A. 3742(a)(2) (West Supp. 1994). Refusal by the trial judge to depart is not considered an "incorrect application" of the guidelines. United States v. Tucker, 892 F.2d 8, 10 (1st _____________ ______ Cir. 1989). "It is by now axiomatic that a criminal defendant cannot ground an appeal on a sentencing court's discretionary decision not to depart below the guideline sentencing range." United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994), ______________ ______ petition for cert. filed, (Oct. 25, 1994) (quoting United States ________________________ _____________ v. Tardiff, 969 F.2d 1283, 1290 (1st Cir. 1992); United States v. _______ _____________ Amparo, 961 F.2d 288, 292 (1st Cir.), cert. denied, 113 S. Ct 224 ______ _____ ______ (1992); United States v. Hilton, 946 F.2d 955, 957 (1st Cir. _____________ ______ 1991); United States v. Romolo, 937 F.2d 20, 22 (1st Cir. 1991)). _____________ ______ There is an exception to this general rule: [A]ppellate jurisdiction may attach if it appears that the failure to depart stemmed from the sentencing court's mistaken impression that it lacked the  ____________________ 5 The defendant identifies three grounds under which the district court could have departed downward. Given the lack of appellate jurisdiction, we need not address the merits of the specific grounds. -8- legal authority to deviate from the guideline range or, relatedly, from the court's misapprehension of the rules governing departures. Id. (quoting United States v. Gifford, 17 F.3d 462, 473 (1st Cir. ___ _____________ _______ 1994). The defendant relies heavily on the following statement made by the trial judge at the sentencing: COURT: All right. I am going to say for the record I don't believe that all that is in the record would warrant me in departing. I don't think there is any basis for a departure. If I am wrong, that is an appealable issue. The defendant argues that, by "expressly allowing for appeal," the district court communicated its doubts concerning the legal basis to depart. However, there can be little doubt that the court made a fact-based, discretionary decision not to depart. The government, apparently concerned that the trial judge's initial remarks could be characterized as ambiguous on appeal, elicited a clarification: AUSA: Just for clarity of the record, is the Court's finding that it does not find the facts in the Presentence Report sufficiently unusual to support a departure? COURT: In other words, on the basis of the fact [sic] that have been brought to my attention, I do not feel that they warrant a departure. The Final Judgment confirms the discretionary nature of the trial judge's refusal to depart downward. The "Statement of Reasons" section includes the following text: -9- The sentence is within the guideline _____ range . . . and the sentence is imposed for the following reasons(s): THE COURT DOES NOT FIND THAT THE CIRCUMSTANCES AND FACTS AS SET FORTH IN THE PRESENTENCE REPORT AND DEFENDANT'S SENTENCING SUBMISSIONS WARRANT DEPARTURE. The district court, cognizant of its legal authority to depart, examined the facts of the defendant's case and made a discretionary decision not to depart based on those facts. Consequently, we lack appellate jurisdiction to entertain an appeal of the defendant's sentence. IV IV CONCLUSION CONCLUSION For the foregoing reasons, we affirm the defendant's conviction and dismiss the appeal of his sentence for lack of jurisdiction. -10-