February 2, 1993
 UNITED STATES COURT OF APPEALS
 For The First Circuit

 

No. 92-1491

 UNITED STATES OF AMERICA,
 Appellee,

 v.

 ABEL A. MARIANO, JR.,
 Defendant, Appellant.

 

No. 92-1630

 UNITED STATES OF AMERICA,
 Appellee,

 v.

 BARRY BUTTERWORTH,
 Defendant, Appellant.
 

 APPEALS FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Raymond J. Pettine, Senior U.S. District Judge]
 
 

 Before

 Selya, Circuit Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Stahl, Circuit Judge.
 
 

 Richard J. Shea, with whom Edward C. Roy was on brief, for
 
appellant Abel A. Mariano, Jr.
 Richard A. Gonnella for appellant Barry Butterworth.
 
 Edwin J. Gale, Assistant United States Attorney, with whom
 
Lincoln C. Almond, United States Attorney, and Margaret E.
 
Curran, Assistant United States Attorney, were on brief, for
 
appellee.
 

 February 2, 1993
 

 SELYA, Circuit Judge. These consolidated appeals
 SELYA, Circuit Judge.
 

challenge determinations made by the district court under the

federal sentencing guidelines. Concluding, as we do, that the

court misconstrued its authority to depart from a predetermined

sentencing range in consequence of a defendant's substantial

assistance, U.S.S.G. 5K1.1 (Nov. 1991), we remand for

resentencing.

I. BACKGROUND

 The instant appeals find their genesis in the polluted

political purlieus of Pawtucket, Rhode Island. See, e.g., United
 

States v. Sarault, 975 F.2d 17 (1st Cir. 1992) (affirming
 

racketeering sentence with respect to Pawtucket's mayor). The

appellants, Abel A. Mariano, Jr. and Barry Butterworth, secured

lucrative municipal contracts and, in the course of performing

the jobs, lubricated the wheels of city government by paying

under-the-table cash stipends to insistent municipal officials.

Mariano made periodic payments (perhaps totalling as much as

$50,000) to forestall the reassignment of sewer-line repair work

to another contractor. Butterworth decided to play ball as part

of his effort to retain generous contracts for the renovation of

McCoy Stadium. In all, Butterworth made a series of payments to

the ringleaders in an aggregate amount exceeding $100,000.

 Appellants' payments took place over a substantial span

of time. It was only after the authorities started to uncover

pervasive corruption in the Sarault administration that

appellants began cooperating with the U.S. Attorney. In the

 2

aftermath of this cooperative effort, the government, rather than

seeking indictments, prepared informations charging the two men

with violating 18 U.S.C. 666(a)(2) (1988).1 The defendants

pled guilty pursuant to plea agreements providing in relevant

part that the government would pursue a reduction in the offense

level based on the defendants' assistance to law enforcement

agencies. 

 Mariano and Butterworth were charged and sentenced

separately. In each instance, the prosecution described the

defendant's cooperation and argued for a six-level downward

departure pursuant to U.S.S.G. 5K1.1. The district court

refused to depart and sentenced each defendant to a twenty-seven

month prison term an incarcerative sentence at the top end of

the guideline sentencing range (GSR). The government moved for

reconsideration. In explaining his refusal to reconsider, the

district judge, referring to and quoting from United States v.
 

Aguilar-Pena, 887 F.2d 347 (1st Cir. 1989), stated that he did
 

not have discretion to depart.

 In these appeals,2 appellants claim in unison that the

 

 1The statute of conviction criminalizes "corruptly giv[ing]
. . . anything of value to any person, with intent to influence
or reward an agent of . . . local . . . government, or any agency
thereof, in connection with any business, transaction, or series
of transactions . . . involving [$5000 or more]," so long as the
governmental unit in question receives substantial federal
subsidies. 18 U.S.C. 666(a)(2).

 2Although the plea agreements contain provisions by virtue
of which the defendants ostensibly waived their rights of appeal,
the government has conceded that, in the circumstances of these
cases, the waiver provisions are impuissant. We accept this
concession uncritically. Hence, we take no view of either the

 3

district court erred in establishing the base offense level (and,

hence, in fixing the GSR), that the court misapprehended the

legal standard governing departures under section 5K1.1, and that

their sentences were "plainly unreasonable" in derogation of 18

U.S.C. 3742(a)(4) (1988). In addition, Mariano contends that

the district court labored under fundamental factual

misconceptions and violated the Due Process Clause by focusing

exclusively on deterrence concerns to the detriment of an

individualized sentence. Not to be outdone, Butterworth contends

that the government breached the plea agreement by failing to

argue enthusiastically enough in support of a downward departure.

 We concentrate initially on appellants' flagship claim

 the assertion that the court below misapprehended the

controlling legal standard, thus mismeasuring the limits of the

discretion entrusted to it under section 5K1.1. We take this

tack because, if this claim pans out, most of appellants' other

asseverations need not be considered.

II. THE COURT'S AUTHORITY TO DEPART

 We begin our discussion of the court's authority to

depart by pondering a jurisdictional quandary. That quandary

resolved, we then address the merits of appellants' claim.

 A. Appellate Jurisdiction.
 

 Ordinarily, an appeal will not lie from a district

court's refusal to depart from a properly calculated sentencing

 

enforceability vel non of such waivers or the safeguards which
 
must be employed in respect thereto.

 4

range. See United States v. Tardiff, 969 F.2d 1283, 1290 (1st
 

Cir. 1992); United States v. Romolo, 937 F.2d 20, 22 (1st Cir.
 

1991) (collecting cases). However, appellate jurisdiction may

attach when it appears that the failure to depart stemmed from

the sentencing court's mistaken impression that it lacked the

legal authority to depart or, relatedly, from the court's

misapprehension of the rules governing departure. See United
 

States v. Amparo, 961 F.2d 288, 292 (1st Cir.), cert. denied, 113
 

S. Ct. 224 (1992); United States v. Lauzon, 938 F.2d 326, 330
 

(1st Cir.), cert. denied, 112 S. Ct. 450 (1991); Romolo, 937 F.2d
 

at 22. Although this paradigm is dictated by the Sentencing

Reform Act, see Romolo, 937 F.2d at 23 (discussing operation of
 

18 U.S.C. 3742(a)), it also works well from a practical

standpoint: in respect to declinations to depart, the limited

appellate review that is available serves to correct errors which

are essentially "legal" in nature, but does not brook

interference with a sentencing court's exercise of factfinding

functions or discretion. See Amparo, 961 F.2d at 292; see also
 

Romolo, 937 F.2d at 23.
 

 These appeals fit snugly within the contours of the

exception permitting appellate review. The gravamen of

appellants' complaint is their colorable claim3 that the

 

 3In what it terms "the rarest of all cases," the government,
which has a duty to see that justice is done, Berger v. United
 
States, 295 U.S. 78, 88 (1935), argues that the defendants'
 
assignment of legal error is on the mark. While such unanimity
of purpose might raise jurisdictional concerns in a civil case,
see Muskrat v. United States, 219 U.S. 346, 361 (1911)
 
(explaining adversity requirement); see also Moore v. Charlotte-
 

 5

district court confused the legal standard governing departures

under U.S.S.G. 5K1.1 with the legal standard governing

departures under a markedly different guideline, U.S.S.G. 

5K2.0. This claim presents a question of law, not of fact,

comfortably within our assigned purview. We hold, therefore,

that we have jurisdiction over these appeals.

 B. The Distinction Between Departure Modalities.
 

 We turn next to the merits of the claim. Because the

assignment of error involves the parameters of a district judge's

departure authority, we afford plenary review. See Lauzon, 938
 

F.2d at 330; cf. United States v. Diaz-Villafane, 874 F.2d 43, 49
 

(1st Cir.) (holding that de novo review is warranted when the
 

court of appeals is called upon to determine "whether or not

circumstances are of a kind or degree that may appropriately be

relied upon to justify departure" under section 5K2.0), cert.
 

denied, 493 U.S. 862 (1989).
 

 The district judge explicitly interpreted our decision

in United States v. Aguilar-Pena, 887 F.2d 347 (1st Cir. 1989),
 

as restricting his ability to depart downward in these cases.

Aguilar-Pena, however, involved a district court's decision to
 

 

Mecklenburg Bd. of Educ., 402 U.S. 47, 48 (1971) (per curiam)
 
(finding no case or controversy where "both litigants desire
precisely the same result"), criminal cases are a breed apart.
When the government confesses error in a criminal proceeding,
appellate courts routinely continue to exercise previously
acquired jurisdiction. See, e.g., Mariscal v. United States, 449
 
U.S. 405 (1981) (per curiam); Young v. United States, 315 U.S.
 
257, 258-59 (1942); see also United States v. Udo, 963 F.2d 1318,
 
1319 (9th Cir. 1992) (reviewing a failure to depart pursuant to 
5K1.1 in circumstances analogous to those presented in this
case).

 6

depart under section 5K2.0.4 See id. at 349-53. Under section
 

5K2.0, a district court is empowered to depart from the GSR if

there "exists an aggravating or mitigating circumstance of a

kind, or to a degree, not adequately taken into consideration by

the Sentencing Commission." U.S.S.G. 5K2.0 (quoting 18 U.S.C.

 3553(b)). Noting that "the birth of the Sentencing Commission

was to some extent reflective of Congress's ardent desire to

dispense with inequalities based on localized sentencing

responses," Aguilar-Pena, 887 F.2d at 352, we held that the
 

district court's authority to depart under section 5K2.0 was

restricted to those few instances where there is "something

'special' about a given offender, or the accouterments of the

crime committed, which distinguishes the case from the mine-run

for that offense." Id. at 350. In other words, Aguilar-Pena
 

reflected this court's staunch belief that section 5K2.0 operates

as a safety valve to be employed at the discretion of the

district judge on those infrequent occasions when some important,

atypical factor, not duly considered by the Sentencing

Commission, removes a particular case from "the heartland for a

given offense." Id. at 351.
 

 U.S.S.G. 5K1.1 is a different provision with a

different raison d'etre. Congress specifically directed the
 

Sentencing Commission to

 

 4Aguilar-Pena flowed naturally from, and relied upon, our
 
opinion in United States v. Diaz-Villafane. See, e.g., Aguilar-
 
Pena, 887 F.2d at 349-50 (citing and quoting Diaz-Villafane, 874
 
F.2d at 49-52). Like Aguilar-Pena, Diaz-Villafane involved a
 
departure under U.S.S.G. 5K2.0.

 7

 assure that the guidelines reflect the
 general appropriateness of imposing a lower
 sentence than would otherwise be imposed . .
 . to take into account a defendant's
 substantial assistance in the investigation
 or prosecution of another person who has
 committed an offense.
28 U.S.C. 994(n) (1988). Section 5K1.1 sprouted from this

statutory seed. It provides, inter alia, that:
 

 Upon motion of the government stating that
 the defendant has provided substantial
 assistance in the investigation or
 prosecution of another person who has
 committed an offense, the court may depart
 from the guidelines.

U.S.S.G. 5K1.1. This guideline serves a dual purpose. In

addition to permitting ex post tailoring of defendants' sentences
 

to reflect meaningful assistance rendered between the dates of

apprehension and sentencing, it provides defendants, ex ante,
 

with an incentive to cooperate in the administration of justice.

See, e.g., United States v. Damer, 910 F.2d 1239, 1241 (5th Cir.)
 

(per curiam), cert. denied, 111 S. Ct. 535 (1990).
 

 The methodological contrast between the two departure

modalities is glaring. Because section 5K2.0 in a sense operates

to promote disparity, the Sentencing Commission strove to

minimize the number of times it would be invoked. But, because
 

section 5K1.1 operates in part as an incentive, promoting

cooperation with law enforcement agencies, the Sentencing

Commission strove to maximize the number of times it would be
 

invoked.5 These divergent purposes, coupled with the

 

 5Available statistics reflect the Commission's success in
achieving this differential. Of 31,785 dispositions reported in
1991, 11.9 percent involved substantial assistance departures

 8

significant linguistic differences between the two guidelines,

clearly indicate that the legal standard for departures under

section 5K2.0 cannot be transplanted into the substantial

assistance sphere. The district court, therefore, erred in its

stated reliance on Aguilar-Pena.
 

 C. The Standard for Substantial Assistance Departures.
 

 In order to determine whether the court's error was

harmless, we must explore the dimensions of the legal standard

that the district court should have used. We have not yet had

occasion to discuss the way in which departure decisions ought to

be made under U.S.S.G. 5K1.1. We do so today.

 1. Discretion. We begin with bedrock.
 1. Discretion.
 

Notwithstanding that a government motion is a sine qua non to a
 

departure for a defendant's substantial assistance, see Wade v.
 

United States, 112 S. Ct. 1840, 1843 (1992), the decision whether
 

to depart after the government has made such a motion, like the

related decision as to the extent of any resultant departure,

falls squarely within the district court's domain. The district

court is not obligated to depart downward simply because a

grateful prosecutor prefers a lighter sentence. See United
 

States v. Spiropoulos, 976 F.2d 155, 162 (3d Cir. 1992); United
 

States v. Ah-Kai, 951 F.2d 490, 494 (2d Cir. 1991); United States
 

v. Munoz, 946 F.2d 729, 730 (10th Cir. 1991); United States v.
 

Carnes, 945 F.2d 1013, 1014 (8th Cir. 1991); United States v.
 

 

whereas only 7.5 percent involved all other departures combined.
See 1991 United States Sentencing Commission Ann. Rep. at 133-35.
 

 9

Richardson, 939 F.2d 135, 139 (4th Cir.), cert. denied, 112 S.
 

Ct. 599 (1991), 112 S. Ct. 942 (1992); United States v. Keene,
 

933 F.2d 711, 715 (9th Cir. 1991); Damer, 910 F.2d at 1241;
 

United States v. Pippin, 903 F.2d 1478, 1485 (11th Cir. 1990).
 

Put bluntly, while a government motion is a necessary

precondition to a downward departure based on a defendant's

substantial assistance, the docketing of such a motion does not

bind a sentencing court to abdicate its responsibility, stifle

its independent judgment, or comply blindly with the prosecutor's

wishes.

 The government, seeking a more prominent role in the

decisionmaking process, points out the Commission's advice that

"[s]ubstantial weight should be given to the government's

evaluation of the extent of the defendant's assistance,

particularly where the extent and value of the assistance are

difficult to ascertain." U.S.S.G. 5K1.1, comment. (n.3). But,

this advice, although sound, was never intended to rein in the

district court's discretion concerning the need for, and extent

of, a downward departure once a government motion is on the

table. See United States v. Castellanos, 904 F.2d 1490, 1497
 

(11th Cir. 1990). Rather, Application Note 3 sets forth the

suggested degree of deference that should be afforded to the

prosecution's assessment of the facts surrounding a defendant's

assistance and intimates that, particularly in difficult cases,

the sentencing court ought not to "inquire too intrusively into

the government's file" on this delicate subject. Spiropoulos,
 

 10

976 F.2d at 163 n.5; see also Keene, 933 F.2d at 714 (observing
 

that the "prosecutor is in the best position to know whether the

defendant's cooperation has been helpful"). When all is said and

done, it remains the district judge's decision not the

prosecutor's whether to depart, and if so, to what degree.

 2. Relevant Factors. Although the district court's
 2. Relevant Factors.
 

discretion in passing upon a section 5K1.1 motion is wide, it is

not unbridled. The guideline itself provides that:

 The appropriate reduction shall be determined
 by the court for reasons stated that may
 include, but are not limited to,
 consideration of the following:
 (1) the court's evaluation of the
 significance and usefulness of the
 defendant's assistance, taking into
 consideration the government's evaluation of
 the assistance rendered;
 (2) the truthfulness, completeness, and
 reliability of any information or testimony
 provided by the defendant;
 (3) the nature and extent of the
 defendant's assistance;
 (4) any injury suffered, or any danger
 or risk of injury to the defendant or his
 family resulting from his assistance;
 (5) the timeliness of the defendant's
 assistance.

U.S.S.G. 5K1.1. While the Commission's list is representative

rather than exclusive, the five enumerated factors should be

considered the mother lode of substantial assistance inquiries.

A district court, faced with a section 5K1.1 motion, must at a

bare minimum indicate its cognizance of these factors. In the

typical case the court would also do well to make specific

findings regarding each item.

 The open-ended nature of the statutory list does not

 11

mean that a district court may consider any datum it pleases when

passing upon a section 5K1.1 motion. As a basis for departing, a

court may consider mitigating factors only to the extent that

they can fairly be said to touch upon the degree, efficacy,

timeliness, and circumstances of a defendant's cooperation.6

See United States v. Chestna, 962 F.2d 103, 106-07 (1st Cir.)
 

(per curiam), cert. denied, 113 S. Ct. 334 (1992); United States
 

v. Thomas, 930 F.2d 526, 528-29 (7th Cir.), cert. denied, 112 S.
 

Ct. 171 (1991). After all, the substantial assistance provision

is not to be used as a mechanism for short-circuiting other, more

restrictive provisions of the sentencing guidelines. See United
 

States v. Hall, 977 F.2d 861, 865 (4th Cir. 1992).7
 

 A somewhat different situation obtains in respect to

the factors that a court may consider as a means to remain

within, or incrementally closer to, the GSR. Since the

sentencing range itself is an expression of Congress's will, a

district court retains broad discretion to exhume factors

unrelated to substantial assistance before burying the GSR. See,
 

e.g., United States v. Mittelstadt, 969 F.2d 335, 336-37 (7th
 

 

 6The narrowing effect of this circumscription should not be
exaggerated. The factors that legitimately relate to a
defendant's cooperation may be many and varied. See U.S.S.G. 
 
5K1.1, comment. (backg'd) ("The nature, extent, and significance
of assistance can involve a broad spectrum of conduct that must
be evaluated by the court on an individual basis.").

 7As this logic makes clear, the government and the
appellants are incorrect in suggesting here that a district court
is obliged to consider factors such as proportionality when
 
deciding whether, or how much, to depart under section 5K1.1.
See United States v. Kohl, 972 F.2d 294, 299 (9th Cir. 1992);
 
Richardson, 939 F.2d at 139.
 

 12

Cir. 1992) (ruling that the district court did not abuse its

discretion in considering defendant's chronic alcoholism on a

section 5K1.1 motion); Carnes, 945 F.2d at 1014 (holding that the
 

benefit a defendant received from the prosecution's decision not

to press an additional charge was a permissible ground for

limiting the extent of a downward departure). Even if the five

factors enumerated in section 5K1.1 weigh in a defendant's favor,

the district court may, on the basis of other considerations, not

constitutionally proscribed, cf., e.g., Wade, 112 S. Ct. at 1843-
 

44; United States v. Drown, 942 F.2d 55, 60 (1st Cir. 1991),
 

decide to forgo or curtail a downward departure for substantial

assistance.

 In sum, the limitations on the variety of

considerations that a court may mull in withholding or curtailing

a substantial assistance departure are not nearly so stringent as

those which pertain when a court in fact departs downward. This

seeming paradox is neither unusual nor unsettling; indeed, it is

this very quality of unequal centrifugal and centripetal forces

that helps distinguish discretionary departure provisions like

section 5K1.1 from the sentencing guidelines' array of mandatory

adjustment provisions like U.S.S.G. 3E1.1 (adjustment for

acceptance of responsibility) and U.S.S.G. 3B1.1, 3B1.2

(adjustment for aggravating or mitigating role in the offense).

 3. Weighing the Factors. Once the government files a
 3. Weighing the Factors.
 

section 5K1.1 motion, weighing the relevant factors in order to

decide whether to depart (and if so, by how much) is something

 13

best done by the sentencing court. United States v. Atkinson,
 

 F.2d , (7th Cir. 1992) [1992 U.S. App. LEXIS 30082 at

*22-25]; Thomas, 930 F.2d at 531. In the section 5K1.1 milieu,
 

as elsewhere, the court of appeals will, to the extent of its

jurisdiction, review discretionary decisions only for abuse of

discretion; and we will review the extent of a departure based on

an acceptable set of factors only to ensure reasonableness. See
 

Diaz-Villafane, 874 F.2d at 49.
 

 D. Summing Up.
 

 We rule today that the legal standard for departure is

materially different under U.S.S.G. 5K1.1 than under U.S.S.G. 

5K2.0. A district court confronted with a government motion for

departure pursuant to section 5K1.1 must consider the factors

specifically enumerated in that guideline as well as other

factors which in the court's judgment bear on the decision. In

so doing, however, the court must recognize that mitigating

concerns are relevant only insofar as they relate to a

defendant's substantial assistance. In all events, the district

court retains wide discretion concerning whether to depart under

section 5K1.1; and, if it decides that a departure is warranted,

it also possesses appreciable discretion in fixing the extent of

the departure.

 In these cases, the district court premised its

decision not to depart on a legal standard designed to hold

departures to a minimum a standard that has no relevance in

respect to substantial assistance departures. And, although many

 14

of the integers that enter into the section 5K2.0 calculus can be

considered for certain purposes under section 5K1.1, we are

unable confidently to say on this record that the judge's error

was harmless. Thus, we remand to the district court with

instructions to vacate appellants' sentences and conduct new

sentencing hearings. We see no need to require that a different

judge preside over the resumed proceedings. Cf., e.g., United
 

States v. Diaz-Bastardo, 929 F.2d 798, 800-01 (1st Cir. 1991).
 

III. THE COURT'S CHOICE OF AN ANALOGOUS GUIDELINE

 Given the fact that new sentencing hearings will be

held, we decline, with one exception, to address appellants'

other challenges to the proceedings below.8 The exception

relates to appellants' assertion that the district court,

confronted by a lacuna in the guidelines, failed properly to

select the most analogous guideline as a starting point for

computing the GSR. We treat with this assertion because we can

envision no circumstances in which a choice of this nature will

not face the district court on remand.

 We set the stage. The Sentencing Commission has yet to

promulgate an offense guideline covering the offense of

conviction in these cases, i.e., the making of illicit payments
 

to a municipal official in violation of 18 U.S.C. 666(a)(2).

In such circumstances, U.S.S.G. 2X5.1 directs the district

 

 8Because we do not reach appellants' "reasonableness"
argument, we take no view of the suitability vel non of the
 
sentences originally imposed.

 15

court to "apply the most analogous offense guideline" unless no

"sufficiently analogous guideline" can be found.9 Appellants

urged that U.S.S.G. 2C1.2 (dealing in part with the giving of a

gratuity to a public official) provided the best basis for a

comparison. The district court rejected this exhortation and

found U.S.S.G. 2C1.1 (dealing with bribery of, and extortion

by, public officials) to be the most analogous guideline.

 We discern no error in this determination. Before

explaining our reasoning, however, we first address the

appropriate standard of appellate review.

 A. Standard of Review.
 

 An appellate tribunal must "give due deference to the

district court's application of the guidelines to the facts." 18

U.S.C. 3742(e) (1988). We have interpreted this statute as

requiring, in most instances, that the court of appeals review a

trial court's application of a sentencing guideline to the facts

only for clear error. See, e.g., United States v. Ruiz, 905 F.2d
 

499, 507 (1st Cir. 1990); United States v. Wright, 873 F.2d 437,
 

444 (1st Cir. 1989). The propriety of using the clearly

erroneous standard in scrutinizing a sentencing court's

 

 9In the court below, appellants argued that a particular
offense guideline, U.S.S.G. 2C1.2, was a better fit than
U.S.S.G. 2C1.1 (the offense guideline deemed most comparable by
the district judge). On appeal, Butterworth attempts for the
first time to raise the different issue of whether any
 
sufficiently analogous guideline exists. This issue has not been
properly preserved for appellate review. See United States v.
 
Slade, F.2d , (1st Cir. 1992) [No. 92-1176, slip op.
 
at 6] (reiterating the established rule that points not argued in
the district court cannot be raised for the first time on
appeal).

 16

application of law to fact will depend largely on whether the

question presented is essentially factual or essentially legal;

the more fact-dominated the question, the more likely it is that

clear-error review will be appropriate. See United States v.
 

Ortiz, 878 F.2d 125, 126-27 (3d Cir. 1989); United States v.
 

Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989); see also Roland
 

M. v. Concord School Comm., 910 F.2d 983, 990-91 (1st Cir. 1990)
 

(discussing desirability of clear-error review in instances where

a district court must find the facts and then make an evaluative

judgment, applying a defined legal standard to the facts), cert.
 

denied, 111 S. Ct. 1122 (1991).
 

 In these cases, a series of factors suggests that the

contested issue lies closer to the fact-intensive end of the

continuum: there is no indication that the district court

misunderstood the choices presented under the guidelines; there

is no articulation of a dispute concerning the reach of the

provisions proffered as suitable analogs; and there is no

necessity for us, in resolving the controversy, to determine the

far broader (and essentially legal) question of whether a

particular offense guideline will always be most analogous to 18
 

U.S.C. 666(a)(2). Simply stated, the issue before the district

court was whether appellants' actions in "corruptly giv[ing]"

payoffs to municipal officials "with intent to influence or

reward" those officials in connection with city contracts, 18

U.S.C. 666(a)(2), were more akin to providing a gratuity,

U.S.S.G. 2C1.2, than to passing a bribe, U.S.S.G. 2C1.1.

 17

This issue is essentially factual. It required the court, in

effect, to find the facts pertaining to the offenses of

conviction and make evaluative judgments concerning those facts

(including a judgment as to whether appellants' payments were

intended to "influence," rather than "reward," city officials).

Accordingly, we apply the clearly erroneous standard of

review.10

 B. The Appropriate Analogy.
 

 The essential difference between a bribe and an illegal

gratuity is the intention of the bribe-giver to effect a quid pro
 

quo. See United States v. Muldoon, 931 F.2d 282, 287 (4th Cir.
 

1991). Hence, a bribery guideline, section 2C1.1, applies when a

transfer of money has "a corrupt purpose, such as inducing a

public official to participate in a fraud or to influence his

official actions." U.S.S.G. 2C1.1, comment. (backg'd). The

gratuity provision, on the other hand, does not include a corrupt

purpose as an element of the offense. See U.S.S.G. 2C1.2,
 

comment. (backg'd).

 

 10In the event no sufficiently analogous guideline exists,
the sentencing court must resort to the general principles
adumbrated in 18 U.S.C. 3553(b) (1988) (providing that, in the
absence of an offense guideline, the court shall impose an
"appropriate" sentence, having due regard for, inter alia, the
 
gravity of the offense; the need for punishment, deterrence,
retraining, and the like; and "the relationship of the sentence
imposed to sentences prescribed by [other] guidelines . . . and
the applicable policy statements of the Sentencing Commission").
Because that scenario has no bearing here, see supra note 9, we
 
find inapposite the standard of review limned in United States v.
 
Gabay, 923 F.2d 1536, 1545 (11th Cir. 1991) (employing de novo
 
review where defendant contended that no sufficiently analogous
guideline existed).

 18

 This distinction between the two offense guidelines is

brought into bold relief by the differences between the statutes

to which the guidelines relate. The bribery guideline applies,

for example, to the offense of "corruptly giv[ing] . . . anything

of value" to a federal official with the intent of "influenc[ing]

any official act" or "inducing" the official to violate his or

her lawful duty. 18 U.S.C. 201(b)(1) (1988). This seems

virtually to mirror the statute of conviction here, which, among

other things, criminalizes "corruptly giv[ing] . . . anything of

value to any person, with intent to influence" a decision of

state or local government. 18 U.S.C. 666(a)(2). The common

thread that runs through both statutes is the intent of the

payer, by the greasing of palms, to affect the future actions of

a public official. In contrast, the gratuity guideline refers to

crimes of a somewhat different genre. It applies, for example,

to persons who give things of value to federal officers "for or

because of any official act performed or to be performed by such

public official." 18 U.S.C. 201(c)(1)(A) (1988). Notably,

under the gratuity guideline, there is no requirement that the

gift be "corruptly" given with the intent to affect the payee's

mindset or actions. Phrased another way, the gratuity guideline

presumes a situation in which the offender gives the gift without

attaching any strings, intending it instead as a reward for

actions the public official has already taken or is already

committed to take.

 With these distinctions in mind, appellants' contention

 19

is easily dispelled. Here, Mariano admitted that he paid large

sums of money in order to forestall city officials from

reassigning the work. Butterworth likewise admitted that he

forked over $100,000 so that he could retain valuable contracts

which Pawtucket might otherwise have redirected to a competitor.

Since Mariano and Butterworth each sought to receive a quid pro
 

quo, in the form of future (favorable) treatment, and since the
 

offenses to which they pleaded guilty involved corrupt intent,

the district court's determination that their actions were more

akin to bribe-giving than to gift-giving was not clearly

erroneous.

 To be sure, appellants protest that they were victims,

not perpetrators, of an extortionate scheme, and that they

received nothing extra in return for their magnanimity. We are

unmoved by these plaints. The fact that appellants, in some

sense, may have been the quarry of a pack of venal politicians,

and did not themselves initiate the forbidden transactions, does

not negate the district court's choice of a guideline analogy.

Bribery and extortion are not mutually exclusive concepts. See,
 

e.g., United States v. Hathaway, 534 F.2d 386, 395 (1st Cir.),
 

cert. denied, 429 U.S. 819 (1976). And the fact that appellants
 

had already received sewer-line and stadium repair contracts at

payoff time is also not outcome determinative. Despite the

chronology, the district court could supportably find that

Mariano and Butterworth corruptly intended their illicit payments

to influence the future actions of the late, unlamented Sarault

 20

administration.

 We need go no further. Having willingly sat down to

sup with the devil, appellants cannot now expect the courts to

swallow their tale uncritically. The guideline analogy chosen by

the district court was well within its purview. See United
 

States v. St. Cyr, 977 F.2d 698, 706 (1st Cir. 1992) (holding
 

that "when there are two plausible views of the record, the

sentencing court's adoption of one such view cannot be clearly

erroneous"); Ruiz, 905 F.2d at 508 (similar).
 

 The defendants' sentences are vacated and the cases are
 

remanded for resentencing.
 

 21