USCA1 Opinion

 

 [NOT FOR PUBLICATION] [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 96-1391 UNITED STATES OF AMERICA, Appellee, v. GREGORY W. FONTAINE, JR., Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Frank H. Freedman, Senior U.S. District Judge] __________________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ _________________________ Robert J. Danie, with whom Bonavita, Gordon, Danie & Walsh, _______________ ________________________________ P.C. was on brief, for appellant. ____ Steven M. Goldsobel, Attorney, Tax Division, U.S. Dept. of ____________________ Justice, with whom Loretta C. Argrett, Assistant Attorney ____________________ General, Robert E. Lindsay and Alan Hechtkopf, Attorneys, Tax __________________ ______________ Division, and Donald K. Stern, United States Attorney, were on _______________ brief, for the United States. _________________________ January 31, 1997 _________________________ SELYA, Circuit Judge. In this sentencing appeal, SELYA, Circuit Judge. ______________ defendant-appellant Gregory W. Fontaine, Jr. challenges both the manner in which the district court conducted the disposition hearing in his case and the computations that the court essayed in establishing the applicable guideline sentencing range (GSR). Discerning no error, we affirm. I. I. __ Background Background __________ Because the appellant's conviction resulted from a guilty plea, we draw the facts from the plea colloquy, the Presentence Investigation Report (PSI Report), and the transcript of the sentencing hearing. See United States v. Garcia, 954 F.2d ___ _____________ ______ 12, 14 (1st Cir. 1992); United States v. Dietz, 950 F.2d 50, 51 _____________ _____ (1st Cir. 1991). While incarcerated at the Hampshire County Jail, Northampton, Massachusetts, Fontaine led a group of inmates in submitting false income tax returns to the Internal Revenue Service (IRS) in order to secure refunds not actually due. After the authorities uncovered the scheme, Fontaine pled guilty to one count of aiding in the filing of a false refund claim. He was being held at the North Central Correctional Institute (NCCI), Gardner, Massachusetts, awaiting the imposition of sentence on this charge, when a further epidemic of false claims erupted. According to the government, Fontaine put together a new ring at NCCI and assisted in the filing of at least eight fraudulent refund claims from October 12, 1993 to April 15, 1994. 2 The government charged that Fontaine recruited fellow inmates and helped them complete apocryphal IRS-1040s, using bogus W-2 forms. When the government became cognizant of what had transpired, it lodged an eight-count information in the United States District Court for the District of Massachusetts. Each count charged the appellant with aiding and abetting the making of a separate false claim against the Treasury. See 18 U.S.C. 2, 287. Pursuant ___ to a non-binding plea agreement, Fontaine pled guilty to one count of the information. The other counts eventually were dismissed. When the probation officer distributed the PSI Report, Fontaine objected to two of its conclusions (involving the degree of planning that the enterprise required and his role in it). He also requested an evidentiary hearing at which the prosecutors would be "compelled to produce witnesses to establish the basis for their allegation[s]". The district court afforded Fontaine an evidentiary hearing on March 18, 1996, but the court did not force the government to proffer any particular witnesses. At the hearing, Fontaine asked that the court order the government to summon the eight other inmates who allegedly participated in the scheme so that he could cross-examine them. The district court refused to issue such an order. However, the government called the agent who investigated the matter, and Fontaine's counsel vigorously cross-examined him. Following the hearing the district court imposed a forty-one month incarcerative sentence. This appeal ensued. In 3 it, Fontaine challenges his sentence on three grounds, namely, (1) the district court's handling of his request for an evidentiary hearing, (2) the court's enlargement of the GSR based on a determination that his criminal activity involved more than minimal planning, and (3) the court's enlargement of the GSR predicated on his supposed role as an organizer or leader of a criminal enterprise. We treat the first assignment of error separately and then group the latter two. II. II. ___ The Evidentiary Hearing The Evidentiary Hearing _______________________ Fontaine berates what he characterizes as the district court's "refusal to allow the defendant to confront the witnesses against him, and to test the accuracy of their allegations through cross-examination." This boils down to a claim that the district court should have ordered the government to call the eight persons alleged to have participated in the tax fraud scheme (all of whom were state prison inmates) so that he could explore alleged inconsistencies in their statements through cross-examination. Neither the Confrontation Clause nor the rules of evidence apply during the sentencing phase of a criminal proceeding, see United States v. Tardiff, 969 F.2d 1283, 1287 ___ _____________ _______ (1st Cir. 1992), and evidentiary hearings at sentencing are the exception rather than the rule. The decision to hold an evidentiary hearing at the time of sentencing or, alternatively, to eschew such a hearing, lies within the discretion of the 4 sentencing court. See United States v. Lilly, 983 F.2d 300, 310- ___ _____________ _____ 11 (1st Cir. 1992); Tardiff, 969 F.2d at 1286; Garcia, 954 F.2d _______ ______ at 19. By the same token, if the court deigns to grant a hearing, the shape and form of the proceeding lie within the encincture of this discretion. See Lilly, 983 F.2d at 311 ___ _____ (finding no abuse of discretion when the defendant "received a hearing, albeit not precisely the kind of hearing that he preferred"). We see nothing remotely resembling an abuse of discretion in this instance. For one thing, the inmates in question were in the custody of the state, not the federal government, and there is no evidence that the appellant made any effort to subpoena them. For another thing, the appellant never tendered a meaningful offer of proof, prior to the actual hearing, in an effort to demonstrate why he needed the live testimony of the eight prospective witnesses. Given these procedural infirmities, it is difficult to fault the district court for not being more receptive to Fontaine's entreaty. Leaving procedural weaknesses aside, Fontaine's assignment of error lacks substance. At the disposition hearing, the government called Anthony Sibilia, an IRS agent who had taken statements from the eight inmates allegedly involved in the scheme. Agent Sibilia testified in excruciating detail as to the results of his investigation. The appellant's counsel cross- examined him at length, pointing out possible inconsistencies between the statements of various witnesses and variations 5 between the proof presented and the government's theory of the case. While Fontaine calumnizes Sibilia's testimony as "unsworn, untested hearsay," it is settled beyond peradventure that hearsay evidence is admissible at sentencing. See Tardiff, 969 F.2d at ___ _______ 1287. The baseline criterion is trustworthiness: at sentencing, the trial court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." Id. (quoting ___ U.S.S.G. 6A1.3(a)). Here, the sentencing court did not deviate from this baseline. Sibilia's testimony was premised on his own investigation, supported by reports that he had compiled and witness statements that he had obtained. The court afforded the appellant access to the underlying documents and a full opportunity to cross-examine the witness. In the course of this cross-examination, the appellant's counsel pointed out not only inconsistencies between witnesses' statements but also inconsistencies between the modus operandi attributed to Fontaine and the returns actually filed by the eight inmates. In addition, the court permitted the appellant to explore what interest the inmates may have had either in pleasing the prosecution or in falsely implicating Fontaine. To this extent, then, Sibilia's testimony, though based on hearsay, was thoroughly tested. Moreover, the testimony had sufficient indicia of 6 reliability to pass muster. The reliability of hearsay statements used at sentencing sometimes can be demonstrated by reference to other evidence in the case. See, e.g., United ___ ____ ______ States v. Phaneuf, 91 F.3d 255, 261-62 (1st Cir. 1996). So it is ______ _______ here. For instance, in the plea agreement Fontaine stipulated that the fraud loss exceeded $10,000, a figure strongly suggesting that he considered himself responsible for all eight of the false claims described in the information. Then, too, the court heard evidence of striking similarities in the various filings similarities that would suggest a common plan to all but the most fervent worshipper of coincidence. The court also had at hand evidence of incriminating statements made by Fontaine in letters to a friend, Christine Pond. These, and other, items bolstered Sibilia's testimony and tended to confirm its reliability. Against this backdrop, we can detect no abuse of discretion in the sentencing court's denial of Fontaine's demand that the government be ordered to produce the eight inmates for cross-questioning. III. III. ____ Calculating the GSR Calculating the GSR ___________________ The district court found that the appellant's offense involved more than minimal planning and therefore raised the base offense level (BOL) by two levels. See U.S.S.G. 2F1.1(b)(2).1 ___  ____________________ 1All references to the sentencing guidelines are to the November 1995 edition, in effect on the date of sentencing. See ___ United States v. Harotunian, 920 F.2d 1040, 1042 & n.2 (1st Cir. ______________ __________ 1990). 7 The district court further found that the appellant had organized an extensive criminal activity and enhanced the BOL by four more levels on that account. See U.S.S.G. 3B1.1(a). The appellant ___ challenges both findings. We review for clear error. See United ___ ______ States v. St. Cyr, 977 F.2d 698, 701 (1st Cir. 1992); Dietz, 950 ______ _______ _____ F.2d at 52. Under that test, "where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. _____________ ____ 1990). A. A. __ More than Minimal Planning More than Minimal Planning __________________________ At sentencing, the district court found that the appellant aided in the preparation of all eight ersatz tax returns and that these "repeated acts," carried out over an extended period of time (approximately six months), involved appreciable planning and forethought. The appellant questions the reliability of the evidence underpinning this finding and further asserts that, even if the evidence can be deemed reliable, it does not prove more than minimal planning. Under the sentencing guidelines, an enhancement for more than minimal planning is appropriate when a defendant's course of relevant criminal conduct includes "repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. 1B1.1, comment. (n.1(f)). The government has the burden of proving the applicability of 8 U.S.S.G. 2F1.1(b)(2) in any given case. See United States v. ___ _____________ Sklar, 920 F.2d 107, 112 (1st Cir. 1990) (explaining that "the _____ government must prove facts central to increasing a defendant's offense level").  We will not tarry. As the foregoing review of the record indicates, the lower court had before it ample evidence of adequate trustworthiness, including the PSI Report, Agent Sibilia's testimony, the striking similarities among the eight false claims, and the details of the earlier scheme at the Hampshire County Jail, to justify a finding that Fontaine engaged in a studied course of conduct that required (and received) more than minimal planning. Given this evidence and given the serial preparation and filing of multiple tax returns and refund claims, there was no error in the imposition of the upward adjustment. See Tardiff, 969 F.2d at 1288-89 (finding that a defendant's ___ _______ "carefully orchestrated series of mailings designed to create a false impression" satisfied the criteria for the planning adjustment); United States v. Gregorio, 956 F.2d 341, 343-44 (1st _____________ ________ Cir. 1992) (holding "repeated preparation and submission of false statements" sufficient to warrant the enhancement); see generally ___ _________ United States v. Fox, 889 F.2d 357, 361 (1st Cir. 1989) ("We ______________ ___ cannot conceive of how obtaining even one fraudulent loan would not require more than minimal planning."). B. B. __ Role in the Offense Role in the Offense ___________________ At sentencing, the district court found that Fontaine 9 "organized the [criminal] scheme," that he "had decision making authority over his accomplices," and that the scheme "involved five or more participants." The appellant challenges these imbricated findings and the four-level upward adjustment that they produced. Under the sentencing guidelines, a four-level enhancement for a defendant's role in the offense obtains if the government shows that the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. 3B1.1(a); see also United ___ ____ ______ States v. Rostoff, 53 F.3d 398, 412-14 (1st Cir. 1995); Dietz, ______ _______ _____ 950 F.2d at 52-54. As with other upward adjustments to the GSR, the government has the burden of proving the applicability of U.S.S.G. 3B1.1(a) in a particular case. See United States v. ___ _____________ Morillo, 8 F.3d 864, 872 (1st Cir. 1993). _______ The government carried its burden here. A fair-minded factfinder, drawing reasonable inferences, could conclude as, indeed, Judge Freedman did that the eight false claims were part of an integrated course of conduct, and that Fontaine (who had orchestrated a similar plot at an earlier time) was the mastermind of it. We have observed before that battles over a defendant's role in the offense will most frequently be won or lost in the district court, see United States v. Graciani, 61 ___ _____________ ________ F.3d 70, 75 (1st Cir. 1995), and that observation holds true in this case. We need go no further. Since the court's determination that Fontaine organized and led a tax fraud scheme involving five 10 or more participants is solidly rooted in the record, we reject the appellant's claim of error. See United States v. Tejada- ___ ______________ _______ Beltran, 50 F.3d 105, 110-13 (1st Cir. 1995); Dietz, 950 F.2d at _______ _____ 52-54. Affirmed. Affirmed. ________ 11